# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-KA-00287 COA

**CALVIN WINSTON A/K/A JAMES CALVIN WINSTON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | FEBRUARY 12, 1996 |
| TRIAL JUDGE: | HONORABLE JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LYNDA CAROL ROBINSON (WITHDRAWN) |
| | MARK T. FOWLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | NOEL D. CROOK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CAPITAL RAPE: SENTENCED TO SERVE A TERM OF 6 YRS IN THE CUSTODY OF THE MDOC WITH 1 YR SUSPENDED & THE REMAINING 5 YRS TO BE SERVED WITHOUT BENEFIT OF PAROLE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/18/1998 |
| MOTION FOR REHEARING FILED: | 1/4/99 |
| CERTIORARI FILED: | 5/11/99 |
| MANDATE ISSUED: | |

EN BANC.

HERRING, J., FOR THE COURT:

¶1. Calvin Winston was convicted of rape by the carnal knowledge of a female under the age of fourteen years in the Circuit Court of Yazoo County, Mississippi, and was sentenced to a term of six years in the custody of the Mississippi Department of Corrections, with one year suspended and the remaining five

years to be served without the benefit of parole. Winston now appeals to this Court alleging (1) the evidence was insufficient to support the judgment and the verdict was against the overwhelming weight of the evidence; (2) the trial court erred in its instructions to the jury concerning the uncorroborated testimony of the child and alleged victim in this case; and (3) the attorneys for the Appellant did not render effective assistance of counsel to him. After a review of the record and applicable law, we affirm Winston's conviction but remand to the trial court for proper sentencing.

## A. THE FACTS

¶2. Calvin Winston, age sixty-seven, was indicted by the Yazoo County Grand Jury on November 30, 1994, for the crime of rape by the carnal knowledge of a female under the age of fourteen years, in violation of Mississippi Code Annotated Section 97-3-65 (Rev. 1994). The alleged victim was thirteen years old on June 17, 1994, the date when the incident occurred that resulted in the charges against Winston.

¶3. According to the record, the minor child was supposed to be baby-sitting on June 17 for her sister but left her sister's child with a friend and went to Winston's home to eat pizza. All witnesses agree that Winston had been a friend of the victim's family for a number of years and at one time had been their next-door neighbor. The evidence is also undisputed that the victim and other children in the area would frequently visit with Winston, who would often give them something to eat and occasionally lend them money. The minor child testified that, on the day in question, she went to Winston's home because he was supposed to get her a pizza. When she arrived at approximately 12:00 p.m., she found Benita Cage, a twenty-six-year-old beautician from across the street already there. After the three of them engaged in conversation for a little while, Benita Cage left to go home but the child remained. Winston then proceeded to cook spaghetti, which they both ate.

¶4. The child testified that after eating the spaghetti, Winston came over and began touching her breasts. When she tried to leave, he grabbed her and took her to a bedroom, took off her clothes, had oral sex with her, and then had intercourse with her as well. At some point, the victim's mother, sister, and brother-in-law came to Winston's home looking for the child. Winston went to the front door and first denied that the child was still at the home. A short while later, after hearing the child's low voice from the back of the house, Winston returned to the door with the child, who was crying. Her clothes were in disarray. After first denying that she had been molested, the child then admitted that Winston had "messed" with her and was ultimately taken to a local hospital for an examination. The child also testified that Winston locked her in a bedroom when he first went to the front door of his house to see the child's mother. The child's mother testified that she slapped the child when she came to door with Winston.

¶5. Officer Tim Jones of the Yazoo City Police Department came to Winston's home after being called by the victim's family. He confirmed that the child's clothing was in disarray, that her shirt and short pants were open and her breasts were exposed. She was not wearing a bra. Officer Jones took the child to the hospital and was accompanied in the vehicle by the child's mother. His description of the child's condition and the disarray of her clothing was corroborated by the testimony of the child's brother-in-law, who accompanied his wife to Winston's home on June 17.

¶6. Dr. Patrick McCain, the emergency room physician at the hospital, saw the child at approximately 2:00 p.m. on the day in question and performed what he called a "typical rape examination." He was of the opinion that the child had engaged in intercourse within a period of approximately two hours prior to his

examination because of (1) the condition of the child's perineal area and (2) a small amount of seminal fluid was taken from the child's vagina, which is a self cleaning organ. However, the doctor observed no bruises, lacerations, or other obvious trauma in his examination of the child. The doctor based his opinion in this case, not only upon his objective findings, but also on his thirty-five years of experience as an emergency room physician.

¶7. Calvin Winston testified in his own behalf and categorically denied engaging in any sexual or other improper activity with the child. He did state that the child came to his home and was with him alone prior to the child's mother coming to the door looking for her daughter. However, he testified that the child had been at his home with him on numerous occasions and came on this occasion wanting to eat pizza. According to Winston, the child wanted to hide from her mother when she learned that her mother was at the front door of the house. Moreover, he said that he was just joking with the mother when he denied that the child was present in his home, that he had been a neighbor and friend of the family for years, and had lent the family money to pay utility bills in the past. He further denied that he had locked the child in a back room of the house and stated that she could easily have gone out a back door or window if she had truly believed herself to be a captive.

¶8. As stated, the jury found Winston guilty as charged.

## B. THE ISSUES

¶9. On appeal, Winston raises the following issues, which are taken verbatim from his brief:

**I. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE**.

**II. THE COURT ERRED IN REFUSING TO GRANT DEFENDANT'S INSTRUCTION D-11 REGARDING THE UNCORROBORATED TESTIMONY OF A CHILD.**

**III. THE ATTORNEYS FOR DEFENDANT AT TRIAL DID NOT RENDER EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THEY APPARENTLY DID NOT UNDERSTAND THE ELEMENTS OF THE CHARGE AGAINST THE DEFENDANT.**

## C. ANALYSIS

**I. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE VERDICT AND WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

¶10. Our standard of review in cases involving an objection to a jury verdict based on the argument that the verdict was against the overwhelming weight of the evidence has most recently been explained by the Mississippi Supreme Court in *Herrington v. Spell*, 692 So. 2d 93, 103-04 (Miss. 1997), wherein the court stated:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that

the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.

(citations omitted). Although *Herrington* was a civil case, the standard of review is the same in criminal cases. *See Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989); *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989) (citing *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987)).

¶11. Winston also challenges the legal sufficiency of the evidence presented against him. This standard of review is somewhat different from that found in a challenge to the weight of the evidence. As our Mississippi Supreme Court has recently held:

When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered points in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is beyond our authority to disturb.

*Brooks v. State,* 695 So. 2d 593, 594 (Miss. 1997).

¶12. Winston first calls our attention to the fact that the State offered no physical evidence to prove that he committed the crime in question. To the contrary, Dr. McClain examined the victim and determined that she had participated in sexual intercourse within the past few hours. Dr. McClain also obtained a small amount of what he determined to be seminal fluid. This substance was later linked to Winston through blood-type matching. Furthermore, the victim testified that Winston raped her, and witnesses testified that immediately after the incident Winston denied that the victim was in his home although the victim later exited the house in a state of undress. Winston also charges that the victim's mother coerced the victim, through physical violence, into admitting that Winston had sexual relations with her, and that information obtained from the victim in such a manner is necessarily insufficient to convict him. We rule that whether or not the child's statement implicating Winston was voluntarily given was a fact question for the jury to decide, after making an assessment of the credibility of the witnesses. It is true that a confession made to law enforcement personnel as a result of threats is inadmissible. *Morgan v. State,* 681 So. 2d 82, 86 (Miss. 1996). However, this rule simply does not apply in a case such as this, where the statement in question is not a confession but is a statement made by the victim of an alleged crime. The purpose of the above-stated rule excluding coerced confessions is to protect the defendant's Fifth Amendment right against self-incrimination. The situation in this case presents no risks of self-incrimination and therefore involves no constitutional concerns.

¶13. In regard to Winston's contention that the verdict was against the overwhelming weight of the evidence, a review of the record in the case *sub judice* reveals no unconscionable injustice resulting from the jury's findings. While it is true that the defendant's version of the events that took place in this case was totally different from the version as shown in the testimony of the State's witnesses, the determination as to

who was telling the truth was made in the proper manner by the jury as the finder of fact. One of the basic tenets of our judicial system is that any questions regarding the weight and worth of witness testimony or witness credibility are for the jury to resolve. *Eakes v. State,* 665 So. 2d 852, 872 (Miss. 1995). In this case, the jury rejected Winston's explanation of the events that took place on June 17, 1994, and believed the testimony of the victim and the other State's witnesses. We will not overturn the findings of the jury acting in the capacity of a fact finder unless those findings are clearly erroneous. *Herrington,* 692 So. 2d at 104. We cannot say in this case that the jury's verdict was clearly erroneous. Thus, we hold that the jury's verdict was not against the overwhelming weight of the evidence.

¶14. Furthermore, in reviewing the record under the sufficiency of the evidence standard, we find that there was sufficient evidence so that a reasonable and fair-minded jury could have found Winston guilty beyond a reasonable doubt. Therefore, we rule that this issue has no merit.

## II. DID THE COURT ERR IN REFUSING TO GRANT DEFENDANT'S INSTRUCTION D-11 REGARDING THE UNCORROBORATED TESTIMONY OF A CHILD?

¶15. A jury instruction, to be proper, must correctly state the law. *Fairley v. State*, 467 So. 2d 894, 901 (Miss. 1985). In the case *sub judice*, Winston argues that the trial court erred in failing to instruct the jury that the uncorroborated testimony of a person who is allegedly raped should be scrutinized with caution, citing *Killingsworth v. State*, 374 So. 2d 221, 223 (Miss. 1979). At trial, the court refused to grant jury instruction D-11 which states as follows:

> The testimony of an infant or child must be corroborate [sic] by other testimony before you can find the Defendant guilty. This corroborative testimony, to be sufficient, must of itself tend to connect the Defendant with the commission of the crime in such a way as reasonably satisfies you that the child is telling the truth.

> Regarding the testimony of the child, the jury is instructed that their testimony must be carefully scrutinized and cautiously examined. This does not mean, however, that such testimony shall be received and given the same weight as a jury weighing it cautiously would give it, taking into consideration a child's power of observation, susceptibility and suggestibility.

> It is the duty of the jury to weigh the testimony of children, taking into account - upon the question of their credibility - their age and intelligence, and their aptitude for perception and observation.

> You are cautioned that children are more suceptible [sic] to influence and suggestion and are more prone to imagination than are adults.

¶16. Winston now concedes in his appellate brief that "[t]he instruction as written was not a correct statement of the law, but the Court should have instructed the jury to scrutinize the uncorroborated testimony of a rape victim." The State argues that even if the trial court is under a duty to modify jury instructions that contain incorrect statements of law, the evidence in this case simply does not support the proposed instruction because the testimony of the victim was corroborated. We agree. As stated, the physical evidence together with the testimony of the State's witnesses corroborate the victim's version of the events. Specifically, the emergency room physician stated that intercourse had recently occurred. State's witnesses testified of Winston's suspicious behavior and the victim's presence at Winston's home in a state of undress immediately prior to the victim being taken to a local hospital for examination. Where an

instruction is unsupported by the evidence, it must not be given. *Clark v. State,* 693 So. 2d 927, 933 (Miss. 1997). However, we rule that the jury was properly instructed and that there was adequate evidence in the record to support the court's instructions. This issue has no merit

### III. DID THE ATTORNEYS FOR DEFENDANT AT TRIAL PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THEY DID NOT UNDERSTAND THE ELEMENTS OF THE CHARGE AGAINST THE DEFENDANT?

¶17. This claim by Winston must be considered by applying the standard of review set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Leatherwood v. State*, 473 So. 2d 964 (Miss. 1985) the Mississippi Supreme Court applied the standards of review set forth in *Strickland* and stated:

> [T]he legal test as to effective assistance of counsel is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result . . . .' The burden of proving ineffective assistance of counsel is on the defendant to show that the counsel's performance was (1) deficient, and (2) the deficient performance prejudiced the defense. If the defendant fails to prove either component, then reversal of a conviction or sentence is not warranted.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different . . . .

*Id*. at 968-69 (citations omitted).

¶18. There is a strong presumption that counsel's conduct is reasonable and professional and that decisions made are strategic. *Murray v. Maggio*, 736 F.2d 279, 292 (5th Cir. 1984). Nevertheless, an attorney has certain "basic" duties when representing a criminal defendant, including the duties to "assist the defendant, to advocate the defendant's cause, to consult the defendant on important decisions and to keep the defendant informed on important developments." *Dufour v. State*, 483 So. 2d 307, 310 (Miss. 1985). See *Payton v. State*, 708 So. 2d 559 (Miss. 1998) for a recent discussion of Mississippi's law on ineffective assistance of counsel.

¶19. In the case before us, Winston claims that his trial counsel was ineffective because she did not understand the nature of the crime for which he was charged, as evidenced by the fact that his counsel argued several times that there was no showing of a violent act or that Winston used force in subduing the victim. Winston calls our attention to the fact that violence or the use of force is not an element of the crime for which he was indicted and that proof beyond a reasonable doubt that the defendant had carnal knowledge of a child under the age of fourteen was all that was required to prove the charge against him. Therefore, Winston argues that he was deprived a fair trial because of the deficient performance of his counsel.

¶20. While it is true that violence or force is not a required element of the crime charged, in this case, we are unable to say that Appellant's counsel was ineffective under the standard of review set forth in *Strickland v. Washington*. The record reveals that defense counsel adequately cross-examined the State's witnesses in regard to the correct elements of the crime. Specifically, the defense attacked the State's assertion that Winston engaged in sexual intercourse with the victim. Further, defense counsel called witnesses, including Winston himself who denied having committed the alleged crime. When viewed in its

entirety, the defense strategy did not depend upon whether or not violence or force was used by Winston to have intercourse with the victim. Arguably, defense counsel was attempting to convince the jury that because there was no evidence that Winston forced himself on the child, then no intercourse occurred at all. Moreover, we cannot say that the trial in this case would have ended in a different manner had the references by defense counsel to the lack of evidence of violent sexual assault not been made. Furthermore, the decision by trial counsel to discuss violence or force, although not an element of the crime, could also be viewed as a strategic decision to attack the credibility of the victim. Regardless of the merit of this strategy, it was the prerogative of defense counsel to use it, and not for us to question unless the strategy was so prejudicially deficient that a reasonable probability arises that a different result in the outcome of the trial would have occurred but for the use of the strategy employed by defense counsel. We rule that this issue has no merit.

### D. CONCLUSION

¶21. We take note, *sua sponte*, of the length of the sentence imposed upon Winston. The crime of rape by carnal knowledge of a child under fourteen years of age is codified in Section 97-3-65 of the Mississippi Code Annotated (Rev. 1994). The statute, in pertinent part, states the following: "[E]very person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, *shall* be sentenced to death or imprisonment for life in the State Penitentiary." (emphasis added). Thus, because Winston was a man well over the age of eighteen at the time of the incident in question, and because the victim was thirteen years of age, his sentence of imprisonment for six years, with five years to serve, was improper. The question we must now consider is whether an appellate court may remand a case to the lower court for imposition of a proper sentence when the original sentence ordered by the trial court was not authorized by statute. As stated by the text writer:

> Sentencing provisions outside the authority of the court are *illegal* or *invalid*. An illegal sentence is void. An illegal sentence does not affect the underlying conviction, although it has also been held that when the punishment assessed is less than the minimum provided by law the judgment of conviction is a nullity and that where the punishment is illegal the judgment of conviction is invalid.

24 C.J.S. *Criminal Law*, § 1504 (1989) (emphasis added). Furthermore, two appellate courts that considered cases similar to the case *sub judice*, where the defendants appealed their convictions but did not raise as an issue on appeal the illegality of the sentences, declared the illegal sentences which did not conform to the statutory requirements to be void and remanded the cases to the trial court for resentencing. *See Harry v. State*, 710 So. 2d 520 (Ct. App. Ala. 1997); *People v. Arna*, 658 N.E.2d 445, 448 (Ill. 1995). As stated in *Arna*, "[a] sentence which does not conform to a statutory requirement is void" and "the appellate court has the authority to correct it at any time." *Id.* at 448. *See also Bozza v. United States*, 330 U.S. 160, 166 (1947) ("It is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal or in habeas corpus proceedings." (citations omitted)); *De Benque v. United States*, 85 F.2d 202, 206 (D.C. Cir. 1936) (finding a sentence in a federal criminal case not imposed in strict accordance with penalty statute is void); *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) (stating that when a court imposes a sentence which statutory law does not permit, the sentence is illegal and void, and the supreme court will vacate it); *Wilson v. State*, 677 S.W.2d 518, 524 (Tex. 1984) (stating that when the punishment assessed is less than the minimum provided by law, this renders the judgment of conviction a nullity); *Powers v. Boles*, 138 S.E.2d 159, 161 (W.Va. 1964) (sentencing not in conformity with or authorized by statute is void).

¶22. Moreover, in *Lanier v. State*, 635 So. 2d 813, 816 (Miss. 1994), the Mississippi Supreme Court ruled that a plea bargain contract between a criminal defendant and the State which resulted in a sentence not authorized by law was void as against public policy. The supreme court in *Lanier* specifically held that the "[e]nforcement of the contract would also yield a result beyond the power of this Court to produce." *Id*. at 816. Thus, although the dissent takes the position that the supreme court only found that the *plea bargain contract* was void as opposed to the sentence itself, we believe that the supreme court also found the sentence itself to be void in *Lanier* when it ruled that the sentence was "beyond the power of this court to produce."

¶23. Writing for the dissent in *Barnett v State*, 95-KA-00353-SCT (Miss. June 11, 1998), Justice McRae stated the following: "This Court, in *Lanier v. State* . . . recognized that a sentence that is not authorized by law, even if agreed to by the parties, is void ab initio." *Id*. at 7. In *Barnett*, the supreme court reversed and remanded a murder conviction for further proceedings because of the erroneous admission of Barnett's statement into evidence which he gave pursuant to settlement negotiations. However, the court rejected Barnett's claim that his sentence to life imprisonment without parole violated *ex post facto* laws. At the time of trial under the applicable statute, a jury could have sentenced Barnett to either death or life in prison. Miss. Code Ann. § 97-3-21 (Rev. 1994). However, the jury sentenced Barnett instead to life without parole in accordance with an amendment to the statute that had taken place after the crime was committed and as an option mentioned in jury instructions that were accepted without objection by the defendant. The supreme court ruled that although it was reversing the conviction on other grounds, Barnett waived his *ex post facto* claim when he failed to object at trial to the jury instruction allowing such a sentence.

¶24. In the case *sub judice*, we have no *ex post facto* claim and no agreement between the parties before us as to sentencing. Instead, we have a situation where the trial court failed to follow the statute and imposed a sentence not authorized by law.

¶25. While the concerns of my colleagues as expressed in the dissenting opinion are well-founded, the conclusion reached by the dissent on this issue would give trial court judges, prosecutors, and criminal defendants unbridled discretion to arrive at sentences for various crimes that they can agree on without regard to the mandates of a statute imposing minimum and maximum sentences so long as the defendant does not appeal.

¶26. It is the duty of the legislature to set the maximum and minimum sentences to be imposed upon convicted criminals, and it is the duty of the judiciary to carry out the imposition of statutorily mandated sentences. The trial court judges of this State must follow the laws enacted by the legislature and sentence those who offend the laws in a uniform manner when called upon to do so by statute. The legislature of the State of Mississippi recognized the severity of the crime of capital rape when they assigned to it a sentence of death or life in prison. The trial court judge does not have discretion to give a lesser sentence than the minimum enacted by the legislature. The State never sought the death sentence in this case, and thus, the trial court should have imposed a life sentence. Accordingly, we remand this case to the Circuit Court of Yazoo County for the imposition of a sentence of life imprisonment in accordance with Section 97-3-65 (1) of the Mississippi Code Annotated (Rev. 1994).[1]

¶27. **THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF RAPE BY CARNAL KNOWLEDGE OF A CHILD UNDER THE AGE OF FOURTEEN IS**

**AFFIRMED AND SENTENCE IS REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., DIAZ, HINKEBEIN, AND PAYNE, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, P.J., AND COLEMAN AND KING, JJ.**

SOUTHWICK, J., dissenting

¶28. The majority asserts that Winston's six-year sentence was void. It remands for imposition of a sentence of life imprisonment, as capital rape is punishable by either life imprisonment or death. The majority concedes that the death sentence was never sought and is not a possibility.

¶29. The rape of a child under the age fourteen by a person over the age of eighteen is punishable by death or by life imprisonment, and by no other sentence. Miss. Code Ann. § 97-3-65(1) (Rev. 1994). The six year sentence here was both erroneous and inexplicable. Giving this improper sentence for capital rape affects the integrity and public reputation of judicial proceedings. Judges and prosecutors have the statutory and ethical obligation to apply statutory sentencing requirements, not occasionally or usually, but always.

¶30. Where the majority and the dissent diverge is on whether the sentence can be increased at this stage. The majority concludes that the sentence was void *ab initio.* That means that Winston has not yet been sentenced at all. Had the majority not noted the issue, presumably Winston still would have no sentence but there is no apparent method by which that ever could be corrected. Relied upon is a case in which a convicted felon raised during post-conviction relief proceedings that the sentence that he had agreed to in plea bargaining was illegal. *Lanier v. State*, 635 So. 2d 813 (Miss. 1994). Lanier had agreed to plead guilty and receive a sentence of life without parole, but that sentence was not authorized by the statute in effect at the time of the crime that Lanier committed. The court held that Lanier could not agree to an illegal sentence and allowed him to challenge it. The court held that the plea bargain "contract is 'void *ab initio*'" because it violated public policy. *Id.* at 816-17. If the plea agreement had not been void, Lanier would have remained bound and the erroneous sentence could not have been corrected by post-conviction relief. *Id.*; Miss. Code Ann. § 99-39-5 (1)(a) (Rev. 1994). *Lanier* found that there is no waiver of a post conviction relief challenge since a plea bargain agreement to an illegal sentence is void. The agreement, not the sentence, was void.

¶31. More recently the court has found that a defendant waived his constitutional right not to be given an *ex post facto* sentence when he failed to object at trial. *Barnett v. State*, 95-KA-00353-SCT ¶ 22 (Miss. June 11, 1998). That defendant was sentenced to life without parole, but unlike Lanier he had not agreed to the sentence in a plea bargain. If a sentence is "void *ab initio*," then the court could not find it valid just because of the defendant's waiver of the issue. An erroneous sentence is not necessarily void and the defendant in *Barnett* waived the issue.

¶32. A much older precedent contrasted erroneous and void sentences and did so in a way that continues to make logical sense. *Ex Parte Burden*, 92 Miss. 14, 45 So. 1 (1907). An erroneous sentence is of the

kind permitted by statute but exceeds the maximum, while a void sentence is of a different kind than is statutorily permitted. *Id.*, 92 Miss. at 26. A thirty-year term in the penitentiary when a twenty year term is the maximum would be erroneous; sending someone to the penitentiary at all when the offense is a misdemeanor would be void. *Id.* at 27. Another *Burden* example of a void sentence is death for a non-capital crime. *Id.* We find that an illegally lenient sentence is not void just as an illegally excessive one is not, so long as the sentence itself is of the *kind* appropriate to the offense. The term of Winston's sentence to the penitentiary was too short. Thus it was erroneous.

¶33. Since Winston's improper sentence was not void, whether it can be corrected now should be our next question. Logically, for this Court to reverse in favor of the State on an issue that no one raises would require that the State have the right to appeal or cross-appeal and have the correct sentence entered. Then, since the State did not appeal, the principles underlying the plain error doctrine must be applicable. An alternative means to reach the error is if it is one that invokes an inherent power of an appellate court. That power would be the reviewing of certain fundamental details of all convictions and sentences regardless of the issues directly raised on appeal.

¶34. The State does in limited circumstances have the right to appeal:

> The state . . . may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
>
> (a) [if indictment quashed];
>
> (b) [question of law in case that ended in acquittal; the legal question is to be answered but reprosecution is not permitted]; and
>
> (c) From a ruling adverse to the state or municipality in every case in which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross appeal had been formally presented by the state. All questions of law thus presented shall be decided by the Supreme Court.

Miss. Code Ann. § 99-35-103 (Rev. 1994).

¶35. This statute enumerates no right to appeal an improper sentence. However, the statute has been interpreted to permit the State to argue in a cross-appeal that a defendant had improperly been given a life sentence by the trial court when the jury had returned a death sentence. *Abram v. State*, 606 So. 2d 1015, 1038 (Miss. 1992). The supreme court reversed the conviction because of an evidentiary error, but also declared that the judge erred as to the sentence of life imprisonment. Whether the court would have reversed solely for resentencing was not factually at issue. The *Abram* court cited approvingly a precedent in which the conviction was affirmed on direct appeal, but "unfortunately for the appellant, we are compelled to decide the question of law presented by the exception of the state to the action of the court below in setting aside the first sentence." *Thomas v. State*, 73 Miss. 46, 49, 19 So. 195 (1895) (cited in *Abram*, 606 So. 2d at 1038). The court interpreted the predecessor to section 99-35-103(c) to require the supreme court to decide all legal questions raised by the State which were properly preserved in the record. The "purpose of the statute was to provide an inexpensive, summary, simple method of cross appeal for the state" in appropriate cases. *Thomas*, 73 Miss. at 49. In *Thomas*, the court found that the defendant had improperly been sentenced for a misdemeanor and the case was remanded for sentencing for a felony. *Id.* at 50.

¶36. Since the State may cross-appeal the sentencing error, may the proper sentence be entered either on appeal or on a remand for that purpose? There is no per se constitutional infirmity to altering a criminal sentence in a way detrimental to a defendant. A defendant may properly receive a higher sentence at a retrial following an appellate reversal. *North Carolina v. Pearce,* 395 U.S. 711, 719-20 (1969). The "Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States,* 330 U.S. 160, 166-67 (1947). In other words, there is no double jeopardy or other constitutionally-created entitlement for a defendant never to receive a higher sentence than the first one imposed. However, the higher sentence must not be the result of the State's attempt to penalize a defendant for appealing. *Pearce,* 395 U.S. at 725-26. Absent vindictiveness, the higher sentence is one of the possible results of the defendant's receiving what he requested: a new trial.

¶37. There may be a problem if the defendant's conviction is *affirmed* but nonetheless the sentence is increased. Even though the first sentence imposed is not the equivalent of an acquittal of a longer sentence, a defendant must still be on notice that a sentence may not be final. *United States v. DiFrancesco*, 449 U.S. 117, 136-38 (1980). If a defendant has appealed but did not have notice that his initial sentence could be changed even if he lost the appeal, then he had an "expectation of finality" to the sentence that cannot be stymied. *Id.* at 137.

¶38. Winston had no notice that the sentence was being contested on appeal. As was held in a case after *DiFrancesco,* if a State's statutes did not allow for review of sentences, then a defendant's expectation of finality in his sentence could not be thwarted by increasing the severity due to an error discovered on appeal. *Pennsylvania v. Goldhammer,* 474 U.S. 28, 30-31 (1985). The Supreme Court has stated that there is no "expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." *DiFrancesco,* 449 U.S. at 136. The "time to appeal has expired" as to the sentence issue when the State did not cross-appeal.

¶39. The double jeopardy concept that is applicable is that there is "a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent." *Id*. at 136. There is no invalid extension of the period of anxiety and uncertainty when the State is exercising its statutory appellate rights to contest a sentence. *Id.* Section 99-35-103(c) as interpreted in *Abram* is a statutory appellate procedure for review of a sentence. Thus Winston would have been on notice of the State's right to seek review, except, of course, the State did not exercise that right.

¶40. That failure gets us to the final question, whether "plain error" can be used to correct improperly low sentences. Two court rules discuss the plain error principle. An evidentiary rule permits a court to take "notice of plain errors affecting substantial rights although they were not brought to the attention of the court." M.R.E. 103(d). An appellate rule prohibits the court from considering issues not raised in briefs, with the exception of noticing "a plain error not identified or distinctly specified." M.R.A.P. 28 (a)(3). A definition of "plain error" has been difficult, because much like other difficult concepts, it is more easily recognized when seen than it is described in the abstract. The Mississippi Supreme Court has said that error is "plain"only if it "affects substantial rights of the defendants." *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991). Though that language refers to rights of defendants and not the State, the cases have only involved defendants' rights. Thus the court's language need not be read to have rejected an issue that was not even raised, namely, plain error that benefits the State.

¶41. Case law has developed under the federal version of M.R.E. 103(d) and the analogous wording of Federal Criminal Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed. . . ."). At its broadest the rule has been interpreted to include anything that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Letting mandatory sentencing statutes be ignored does affect the integrity and reputation of judicial proceedings.

¶42. Even if the reputation of the courts is affected by an illegally lenient sentence, there still must be a constitutional or statutory provision or an inherent power that allows the sentence to be corrected at this stage. I cannot find any. For example, after the term of a circuit court has passed, the trial judge no longer has authority to amend a sentence. *Harrigill v. State,* 403 So. 2d 867, 869 (Miss. 1981). Once a case is appealed and affirmed, no court "has power to simply review a case and decide whether or not the original sentence should be amended in any way. Any attempt to do so is a nullity." *Id.* These principles have recently been reiterated. *Mississippi Comm'n on Judicial Performance v. Russell,* 691 So. 2d 929, 937 (Miss. 1997). Other than on direct appeal in which the issue is raised, we find no means by which an illegally low sentence can be corrected.

¶43. An illegally high sentence may be challenged by an inmate even after an appeal under the Post-Conviction Relief Act, but the Act grants the State no converse privileges. Miss. Code Ann. § 99-39-1 *et seq*. (Rev. 1994). The supreme court has recently noted that a felon's "right to be free from an illegal sentence has been found to be fundamental" and the court has "carved an exception to these procedural bars" under the post-conviction relief statutes to permit a correction at any time. *Sneed v. State*, No. 97-CP-00531-SCT. ¶ 11 (Miss. Sept. 17, 1998); see also *Smith v. State,* 477 So.2d 191, 195-96 (Miss. 1985). The fundamental rights concept has never to my knowledge been extended to interests of the State and society. Those interests are fundamental to a well-ordered society. Their protection during criminal prosecutions has always been through the vigilance of the State's officials in seeking review in the normal procedural course. The normal procedural course, which only permits the State to cross-appeal this sentencing error, would have allowed Winston to control the risk of subjecting himself to the possibility of a life sentence by deciding whether to dismiss his appeal once the State raised the issue in its responsive papers.

¶44. Other states have faced this issue of whether plain error can address an improperly low sentence. Louisiana has answered in the negative. After discussing statutes and court rules for reviewing both assigned and plain errors (called "patent" in Louisiana), the supreme court held that it could "correct a patent error when the matter is otherwise properly before the court on appeal, but there is no codal or statutory authority for an appellate court to search the record for patent sentencing errors to the detriment of the only party who sought review by the appellate court." *State v. Fraser*, 484 So. 2d 122, 124 (La. 1986). Among the reasons for the conclusion were these:

> 1) Correcting patent error "when the error is favorable to the appellant, is contrary to the basic precepts of appellate practice and procedure, because a sole appellant's position should not be worsened by having appealed." *Id.* at 125.

> 2) The appellate court should maintain both the appearance and even more importantly the reality of impartiality, which is lost when the court "supplies an objection to the prosecutor who has not complained" of the error. *Id.*

3) The due process implications of "chilling" the exercise of appellate rights were not considered because the decision was reached on different grounds. *Id.* at 124 n.6.

¶45. The Arizona Supreme Court arrived at the same conclusion in *State v. Dawson*, 792 P.2d 741 (Ariz. 1990). It first held that it is only through statutory or constitutional provisions that an appellate court has jurisdiction over any case or part of a case. *Id.* at 743. A jurisdictional prerequisite for a party to raise an issue is to file a notice of appeal or cross-appeal. *Id.* If neither party appeals, a criminal judgment becomes final except to the extent reviewable by post-judgment procedures. *Id.* at 746. Absent a notice of cross-appeal attacking the sentence, correcting errors benefitting the defendant in the sentence is procedurally barred. *Id.* "Obviously, a judgment not appealed from cannot be corrected by an appellate court no matter how blatantly and publicly the error appears on the face of the record." *Id.* There is, in other words, no inherent power to correct a too-lenient sentence unless the leniency has been appealed.

¶46. I find no mechanism by which the sentence error would be correctable had Winston not appealed, at least not after the term of circuit court expired. As the supreme court said in another capital rape conviction, defense counsel "would not appeal this case and assign as error [the sentencing issue] if he was aware that the case might be reversed and remanded for consideration of imposing the death penalty." *Williams v. State,* 427 So. 2d 100, 105 n. 1 (Miss. 1983). Since the sentence issue was not raised on appeal, Winston had a reasonable expectation that unless the conviction was reversed, the sentence was final.

¶47. I summarize these points. "Plain error" in the normal criminal appeal recognizes an issue beneficial to the *appellant* or *cross-appellant* that was not preserved properly at trial and may even not have been raised here. Yet it is still an issue beneficial to a party who has appealed. When an appellee does not cross-appeal, that party is accepting the judgment with all its flaws. The State must "prosecute an appeal" under Section 99-35-103 (c), which requires the State formally to present its issue. We cannot raise an unraised issue to assist a party not seeking assistance.

¶48. Criminal cases are not a game, and the rules must not be weighted unfairly in favor of the defense or the State. The serious business of determining guilt and sentence is controlled by rules that contemplate reasonableness and predictability. For an appellate court on its own motion to inject an issue adverse to the defense that was not raised by the State, when earlier knowledge of the point would have allowed the defense to weigh its impact and avoid it altogether if desired, tends to make the court a participant and not just an impartial arbiter.

¶49. Notice to the defendant of what is at stake in proceedings is important for double jeopardy purposes. There is an "expectation of finality in his sentence . . . [once] the time to appeal has expired." *DiFrancesco,* 449 U.S. at 136. Whatever else an "expectation of finality" might mean, it covers Winston's belief that since the State did not cross-appeal and since he has served almost half his sentence (apparently Winston has been in custody and was not released on appeal bond), that his sentence was a settled issue. We do not have the power to undermine that finality.

**MCMILLIN, P.J., COLEMAN, AND KING, JJ., JOIN THIS SEPARATE OPINION.**

1. We recognize that an amendment, effective July 1, 1998, rewrote this section.