919 So.2d 190 (2005)
Julius Wesley KIKER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02376-COA.
Court of Appeals of Mississippi.
June 7, 2005.
Rehearing Denied October 11, 2005.
*193 Sidney Amon Barnett, Darryl A. Hurt, Lucedale, attorneys for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Julius Wesley Kiker ("Kiker") was convicted of murder in the Circuit Court of George County. He was sentenced to life in prison in the custody of the Mississippi Department of Corrections. Kiker moved for a judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court denied his motion. We find no error and affirm.

FACTS
¶ 2. The record before us presents two versions of the relevant events. Both versions involve the same two participants: the defendant Julius Wesley Kiker, and the victim, his wife, Renee Kiker.
¶ 3. The Kikers' marriage was, by all accounts, a "stormy" and "hostile" relationship involving alleged physical abuse by both. The State's theory was that the Kikers' marriage was a "volatile domestic relationship" which led to bloodshed. On the day of the shooting, Renee and Kiker were in a heated argument. Kiker was irate because Renee had burned most of his clothes in the yard. Wade Bowlin, Renee's son, left the home to give the couple time to "work things out." Before Wade left, he saw Kiker with the gun that killed Renee.
¶ 4. Kiker's neighbors, Anthony Buckley and Dee Tompkins, testified that they heard gunshots between 6:00 p.m. and 7:00 p.m. After the shots, Kiker appeared at Tompkins' home. Kiker was intoxicated and asked to use Tompkins' phone and for a ride to purchase cigarettes. Later, Tompkins witnessed Kiker standing in his yard with a gun. Elizabeth Reed, Kiker's mother, called the sheriff's department to report that Kiker's phone lines were down and requested that someone investigate. Deputy Purvis arrived at the Kiker home and found Kiker standing over Renee's covered body holding the gun that killed her.
¶ 5. According to Kiker's account of the events, Renee's hostile demeanor had worsened in recent months. On the evening in question, Kiker and Renee were in an argument. Kiker left home purportedly to allow Renee time to calm down. Renee followed Kiker to Harold's beer joint. She threatened Kiker and yelled insults to Kay Allgood accusing her and Kiker of infidelity. The Kiker's left Harold's and the argument continued at home. Renee allegedly pushed Kiker and kicked him in the ribs. Renee then left their home for less than an hour. The argument continued when Renee returned home. Kiker went outside and, as Renee followed him, she waved a gun and threatened to kill him. Renee pointed the gun at his face. A struggle ensued and two shots were fired. The second shot killed Renee. Kiker was in shock and covered Renee's body with a comforter before seeking help from Tompkins and his mother.
*194 ¶ 6. The jury believed the State's version and found Kiker guilty of murder. On appeal, Kiker asserts the following issues: (1) the prosecution violated the rule of sequestration in a tactical maneuver which prejudiced Kiker's right to a fair trial; (2) Kiker's jury was not sworn with a capital or non-capital petit juror oath, and therefore his verdict is unconstitutional, contrary to a mandatory statute and void; (3) Kiker's conviction for murder was unsupported by sufficient evidence and the trial court erred in denying his motion for a directed verdict, his request for a peremptory instruction, his motion for a new trial or a JNOV, and in not applying the Weathersby Rule; (4) the trial court erred in admitting photographs which served no other purpose than to inflame the jury against Kiker; and (5) the trial court erred in admitting improper impeachment testimony through Dr. Van Derwood and in limiting the testimony of Elizabeth Reed.

ANALYSIS

I. Whether the State violated the rule of sequestration.
¶ 7. Kiker argues that the trial court erred in allowing Deputy J.D. Mitchell to testify in the State's rebuttal case because he remained in the courtroom for much of the testimony of the State's casein-chief. Kiker contends that this violated Rule 615 of the Mississippi Rules of Evidence, and his defense was prejudiced. Rule 615 provides:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
¶ 8. The purpose of the rule is to prevent a witness from adapting his/her testimony to previous testimony. Douglas v. State, 525 So.2d 1312, 1316 (Miss.1988) (quoting Geders v. United States, 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)). When a party invokes the rule, the trial court must apply it; the trial court has no discretion. Finley v. State, 725 So.2d 226, 233(¶ 22) (Miss.1998). The rule also applies to rebuttal witnesses. Id. at 233(¶ 21). Kiker must demonstrate that the trial court abused its discretion which resulted in prejudice to his defense. Id. This Court will not simply reverse a trial court for failing to order a mistrial or to exclude testimony after a sequestration violation. Id.
¶ 9. Once a witness has violated "the Rule," the trial court has discretion as to the proper remedy. Id. at 233(¶ 23). Appropriate remedies for a sequestration violation include prospectively excluding the witness where prejudice will otherwise ensue; striking the testimony where connivance gave rise to the testimony; striking the testimony where the prejudice arose. Id. The most appropriate remedy is allowing the other party to subject the witness to a "full-bore cross-examination" on the facts of the rule violation. Id. Finally, the court may instruct the jury that it may consider the rule violation when the jury evaluates the violating witness's credibility.
¶ 10. Kiker cites Douglas v. State, 525 So.2d 1312 (Miss.1988). In Douglas, the sheriff remained in the courtroom for the entire trial and was called by the prosecution as a rebuttal witness. Douglas, 525 So.2d at 1316. The trial court allowed the sheriff's testimony over the objection of Douglas' counsel. Id. On appeal, the supreme *195 court held that it was error to allow the sheriff to testify, but striking a witness' testimony was a severe sanction and should only be used where a party suffered actual prejudice. Id. at 1318. Whether the error resulted in sufficient prejudice and the appropriate remedy was within the trial court's discretion. Id. The court concluded that the error did not amount to sufficient prejudice and that the appropriate remedy was a full-bore cross-examination as provided by the trial judge. Id.
¶ 11. Kiker cites Douglas for the proposition that "the Rule" applies to rebuttal witnesses. Id. at 1316. Here, as in Douglas, Mitchell remained inside the courtroom for much of the State's case-in-chief but was called as a rebuttal witness for the testimony of Elizabeth Reed, Kiker's mother. In Douglas, the sheriff remained in the courtroom for the entire trial. Id. at 1317. Mitchell was not present for any of Reed's testimony, but rather only heard the testimony of Grant Graham, Bobby Crawford, and Dr. Steve Hayne. Mitchell heard none of Reed's testimony. The record is clear that when the State realized that Mitchell was going to be a rebuttal witness concerning the testimony of Reed, he was removed from the courtroom. Therefore, there was no undue prejudice, and Mitchell's rebuttal testimony was admissible.
¶ 12. The second part of Kiker's argument relies upon a previous ruling by the trial court. Earlier in the trial, the State requested that Mitchell remain in the courtroom during its case-in-chief so Mitchell could later testify to a "time line of events" of the night in question. The trial court denied this request.
¶ 13. Kiker argues that Mitchell's rebuttal testimony was inadmissable since his testimony referenced the time of events on the night in question. Reed testified that Kiker called her at approximately 9:45 p.m. on the night Renee was killed. On rebuttal, Mitchell testified that in his interview with Reed, she stated that Kiker called her between 7:00 and 8:00 p.m. The trial court determined that this rebuttal testimony was different than the previous ruling regarding the "time line of events." The purpose of Mitchell's rebuttal testimony was to impeach Reed. Mitchell was not present during Reed's testimony and therefore, there was no resulting prejudice to Kiker.
¶ 14. The trial court had discretion as to the best remedy for a sequestration violation. Here, it allowed a full-bore cross-examination. Defense counsel fully cross-examined Mitchell before the jury. This was the appropriate remedy. Accordingly, we find no error.

II. Whether it was error for the trial court not to administer the capital juror oath.
¶ 15. Next, Kiker argues that it was reversible error for the trial court not to have administered the capital juror oath. Kiker cites Miller v. State, 122 Miss. 19, 84 So. 161 (1920), to support his argument. In Miller, the jurors took an oath to answer truthfully the questions as to their qualifications rather than an oath to properly try the issues of the case. Id., 122 Miss. at 19, 84 So. at 162. The jurors were not administered a subsequent oath until after testimony had begun. Id. The Mississippi Supreme Court concluded that jurors must be sworn before hearing evidence so as to "heighten the conscientious manner in which [the jurors] received and considered the evidence. . .". Id. at 20, 84 So. 161. Though Miller indicates that the failure to administer this special oath in capital cases is reversible error, it is not entirely clear from the case that the error was the same as the one now before this Court.
*196 ¶ 16. In Wilburn v. State, 608 So.2d 702 (Miss.1992), the jurors received the somewhat broader oath presently found in Mississippi Code Annotated Section 13-5-71 (Rev.2002). However, after being specifically chosen to try a rape case, the jurors in Wilburn may not have been administered the oath required by Section 13-5-71. Wilburn, 608 So.2d at 705. The possible failure to give the jury the proper oath was discovered before completion of cross-examination of the first witness. Id. The trial court denied defense counsel's motion for mistrial and the matter was raised as error on appeal. Id. The supreme court found that the two oaths were "substantially equivalent," and that "[t]o suggest otherwise is to exalt form over substance." Id. Based on that conclusion, the supreme court found "no reversible error for the possible omission of the administration of two separate oaths under the facts of this case." Id.
¶ 17. Here, on the morning of trial, but prior to the selection of the twelve jurors impaneled to try Kiker's particular case, jurors were given the following oath according to the language found in Mississippi Code Annotated Section 13-5-71(Rev. 2002):
You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence. So help you God.
¶ 18. Kiker points out that Mississippi Code Annotated Section 13-5-73 (Rev. 2002) provides that "[t]he jurors in a capital case shall be sworn to well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law." The jurors who tried Kiker's case had been sworn to "well and truly try all issues . . . and [a] true verdict give according to the evidence." However, they had not been sworn to "well and truly try the issue between the state and the prisoner." Miss. Code Ann. § 13-5-73 (Rev.2002) (emphasis added).
¶ 19. The failure to administer the second oath to the jurors, as set out in Section 13-5-73, was not reversible error. Wilburn, 608 So.2d at 705. The two oaths are substantially equivalent, if not substantially the same, since "all issues" inherently includes "the issue [joined] between the state and the prisoner." Id. Therefore, we find this issue to be without merit.

III. Whether the trial court erred in denying Kiker's motions for judgment notwithstanding the verdict or in the alternative for a new trial. Whether the trial court erred in refusing to apply the Weathersby Rule to Kiker's case.
¶ 20. Kiker next argues that he is entitled to a new trial because the evidence was insufficient to convict him. He asserts that the evidence did not prove that he intended to kill Renee. As such, Kiker claims the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
¶ 21. Motions for judgment notwithstanding the verdict implicate the sufficiency of the evidence. Bullins v. State, 868 So.2d 1045, 1048(¶ 12) (Miss.Ct.App. 2004). Our standard of review on the question of the legal sufficiency of the evidence is clearly defined. In Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss. 1999), the Mississippi Supreme Court held:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite *197 limited. We proceed by considering all of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give [the] prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
¶ 22. On a motion for a new trial, we look to determine whether the jury verdict is against the overwhelming weight of the evidence. Montana v. State, 822 So.2d 954, 967(¶ 61) (Miss.2002). In doing so, we must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id. at 967-68. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Id. at 968.
¶ 23. It was within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense. Hester v. State, 463 So.2d 1087, 1093 (1985). Wade Bowlin testified that he saw Kiker holding the gun that killed Renee. Lewis Howell and Michael Bowlin opined that Kiker was intoxicated when they saw him. Both Anthony Buckley and Dee Tompkins testified that the shooting occurred at approximately 7:00 p.m. and that Kiker was "irate and mad." Gunshot residue was only found on Kiker. From this evidence, and considering the appropriate standards of review, the jury could certainly infer Kiker's guilt.
¶ 24. Next, Kiker admitted that he killed Renee, but claims that he gave a plausible explanation that had to be accepted. Kiker asserts that the trial court erred in refusing to apply the Weathersby Rule to his claim. Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
¶ 25. The Weathersby Rule requires that when self-defense is alleged, if "the defendant's witnesses are the only eyewitnesses to a homicide, their version of what happened, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible evidence, physical facts or facts of common knowledge." Harveston v. State, 493 So.2d 365, 370-71 (Miss. 1986)(citing Weathersby, 165 Miss. at 209, 147 So. at 482 (1933)). However, this rule will not apply where the defendant's version is patently unreasonable, or contradicted by physical facts. Blanks v. State, 547 So.2d 29, 33 (Miss.1989). Since Kiker was the only eyewitness to Renee's death, his version must be reasonable and credible before he is entitled to an acquittal under the Weathersby Rule. Blanks, 547 So.2d at 33.
¶ 26. Kiker's defense was that the killing was accidental. He claimed that Renee was the aggressor and that she had accosted him in public and threatened him with the gun. According to Kiker, he and Renee were struggling over control of the gun when it suddenly fired twice. The jury clearly rejected Kiker's explanation.
¶ 27. The physical evidence contradicted Kiker's theory of self-defense. Grant Graham, the State's blood spatter expert, *198 opined that based upon the pattern of the blood spatter, there was no "face-to-face" struggle over the gun. Kiker had "high velocity blood spatter" on his boots indicating that he was standing two to four feet away from Renee when she was shot. David Whitehead, a second expert from the State's crime lab, testified that Renee did not have gun shot residue on her hands. Whitehead opined that had there been a struggle, as Kiker claimed, such residue would be found on Renee's hands.
¶ 28. Kiker's own statements made after Renee's death contradict his self-defense claim. Bobby Crawford testified that while in jail, Kiker admitted that he shot his wife in the head. Kiker told Crawford that he could no longer withstand his wife's "mistreatment."
¶ 29. The physical evidence and Kiker's statements following the killing were not consistent with that of a person who has accidentally killed his wife. A jury issue was created as to whether Kiker was guilty as charged in the indictment. The credibility of witnesses is a matter for the trier of fact. Winston v. State, 726 So.2d 197, 201 (¶ 12) (Miss. Ct.App. 1998) (reversed on other grounds). The jury chose not to believe Kiker's theory, which they had a right to do. Thus, we find that this assignment of error is also without merit.

IV. Whether the trial court erred in admitting photographs of the crime scene and the victim's body.
¶ 30. Kiker also argues that the trial court erred in overruling his motion to exclude exhibits 8 through 14. These exhibits consisted of photographs of the crime scene and Renee's body. Kiker argues that the photographs should be excluded because they were gruesome and lacked probative value. The trial court found that each of the photographs showed a different aspect or angle of the victim's body, which was of evidentiary value, and admitted them into evidence. In his ruling, the trial judge stated that he found the photographs to be "part of the scene of the crime" and, therefore, probative.
¶ 31. "Some probative value is the only requirement needed to buttress a trial judge's decision to allow photographs into evidence." Dycus v. State, 875 So.2d 140, 161(¶ 84) (Miss.2004) (reversed on other grounds) (citing Snow v. State, 800 So.2d 472, 491(¶ 67) (Miss.2001)). Furthermore, the admissibility of such photographs rests within the sound discretion of the trial court and will not be overruled unless there was an abuse of discretion. Gray v. State, 728 So.2d 36, 57(¶ 92) (Miss. 1998).
¶ 32. Here, the photographs had "some probative value." Dycus, 875 So.2d at 161(¶ 84). The photographs were used at trial to (1) identify Renee Kiker, (2) describe the location of Renee's body, (3) describe the wounds that Renee suffered, (4) describe the circumstances in which Renee was killed, and (5) describe the cause of Renee's death. We find that the trial judge did not abuse his discretion and did not err. Accordingly, this issue is also without merit.

V. Whether the trial court erred in admitting improper impeachment testimony through Dr. Van Derwood and in limiting the testimony of Elizabeth Reed.
¶ 33. Finally, Kiker argues that he was improperly impeached and that it was error for the trial court to limit Reed's testimony. Specifically, Kiker contends that the impeachment by the State was improper since it related to a separate incident from the one with which he was charged and tried.
*199 ¶ 34. At the outset, we recognize that Kiker did not make the specific objection at trial that he raises here on appeal. The record reveals that Kiker made an objection on the basis of remoteness. However, the trial court was never presented with nor considered whether such testimony had a prejudicial effect. When a party makes an objection on specific grounds it is considered a waiver regarding all other grounds. Burns v. State, 729 So.2d 203, 219(¶ 67) (Miss.1998). "[A]n objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial." Brown v. State, 682 So.2d 340, 350 (Miss.1996) (citing McGarrh v. State, 249 Miss. 247, 276, 148 So.2d 494, 506 (1963)). The procedural bar notwithstanding, we will address the merits of this issue.
¶ 35. The record reflects that Kiker put his propensity for violence at issue, and it was entirely proper to impeach his testimony. On direct examination, Kiker made the following statements:
Q: That's her first husband?
A: Yes. He beat her all the time. . . . I am not an abusive man. I don't believe in hitting women. . . .
Q: You're not able to stand up because of disability much?
A: I'm not real stable. I have a weak right side.
Q: Go ahead.
A: She knocked me down. I said, what are you trying to make me into, like your ex-husband, just because he beat you all the time. I am not going to beat you. I am not going to beat you. I said, but I've had enough of this.
Q: Did you ever have any intention of killing Renee?
A: No, sir. That never crossed my mind. I would never do harm to my wife. I loved that woman. . . .
¶ 36. In response to questions by his own attorney on direct examination, Kiker testified that he was not a violent man, nor had any intentions of ever hurting Renee. These broad statements opened the door for impeachment. Johnson v. State, 666 So.2d 499, 503 (Miss.1995) (citing Quinn v. State, 479 So.2d 706, 708-09 (Miss.1985); Pierce v. State, 401 So.2d 730, 733 (Miss. 1981)). During cross-examination, the State questioned Kiker about a previous altercation between he and Renee. Kiker denied the allegation. Kiker's denial was contradicted by Dr. Van Derwood's rebuttal testimony.
¶ 37. On rebuttal, Dr. Van Derwood testified that in May of 2001, he treated Renee at the George County Hospital. Renee told Dr. Van Derwood that Kiker hit her with a flashlight and beat her in the chest. Renee was treated for a laceration on her head and bruises on her chest. This testimony was not admissible to establish the truth of the facts alleged against Kiker. Johnson, 666 So.2d at 503 (citing Quinn, 479 So.2d at 708). However, such broad statements were proper for purposes of impeaching Kiker's credibility. Id. at 503.
¶ 38. The second part of Kiker's argument claims that it was error to exclude Elizabeth Reed's hearsay statements. Reed's testimony concerned a phone call she received from Kiker after Renee's death wherein he claimed that Renee's death was an accident. At trial, Kiker argued that the statements were admissible under the excited utterance exception to the hearsay rule.
¶ 39. Hearsay statements are excluded under Mississippi Rule of Evidence 801(c), which defines hearsay as "a *200 statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, Reed's statements were hearsay. However, Mississippi Rule of Evidence 803(2) provides for an exception to the exclusion of hearsay evidence, namely a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale for this exception is that one caught in a sudden, startling event lacks the capacity for calm reflection, tending to make such statements reliable. Smith v. State, 733 So.2d 793, 799(¶ 20) (Miss.1999). When evaluating whether a statement will qualify as an excited utterance, "it is important that there has been no intervening matter to eliminate the state of excitement and call into question the reliability of the utterance." McCoy v. State, 878 So.2d 167, 173(¶ 12) (Miss. Ct.App.2004).
¶ 40. Clearly, such an "intervening matter" eliminated Kiker's excited state in the present case. Reed was not the first person Kiker encountered after the shooting. Dee Tomkins testified that Kiker came to his home and asked to use the phone and for a ride to purchase cigarettes. Tompkins took Kiker to purchase cigarettes and left him with Tompkins' mother. Kiker called Reed from Tompkin's mother's home. Here, Kiker made the statements to Reed more than one hour after the shooting. Given the interval of time between the shooting and Kiker's statements to Reed, the requisite spontaneity is not present. Hence, the statements do not fall under the excited utterance exception.
¶ 41. Whether a statement was made while under the stress of an event is a decision best resolved by the trial court in its sound discretion. Davis v. State, 611 So.2d 906, 914 (Miss.1992). The trial judge has discretion to either accept or reject evidence offered. Austin v. State, 784 So.2d 186, 193(¶ 23) (Miss.2001). We will only reverse a trial court's decision when an abuse of discretion results in prejudice to the accused. Id. at 193-94(¶ 23). Here, the trial judge found the testimony was not admissible under Rule 803(2) of the Mississippi Rules of Evidence, as an exception to the hearsay rule. The record supports the trial court's decision. Therefore, we find that the trial court did not err in excluding Reed's testimony. Stokes v. State, 797 So.2d 381, 386(¶ 14) (Miss.Ct. App.2001). This issue lacks merit.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF MURDER AND SENTENCE TO SERVE LIFE IN PRISON IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., AND IRVING, J., CONCUR IN RESULT ONLY.