# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01341-SCT

*JULIUS WESLEY KIKER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2008 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PERCY STANFIELD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 02/17/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Julius Wesley Kiker was convicted by a jury of the March 6, 2002, murder of his wife,
Renee Kiker, and sentenced to life imprisonment.  The Court of Appeals was assigned his
direct appeal and affirmed both his conviction and sentence.  ***Kiker v. State (Kiker I)***, 919
So. 2d 190 (Miss. Ct. App. 2005).  Two years later, a panel of this Court granted Kiker leave
to proceed in the trial court on his post-conviction claim that his Sixth Amendment rights
were violated due to his trial counsel's representation of a witness for the State.  An
evidentiary hearing was held in the George County Circuit Court, and the trial judge denied

Kiker's petition. Kiker appealed the denial of his petition, and the Court of Appeals affirmed. *Kiker v. State (Kiker II)*, 2009 WL 3740685 (Miss. Ct. App. Nov. 10, 2009). This Court granted Kiker's petition for writ of certiorari. Finding that Kiker's attorney had an actual conflict of interest, and that Kiker did not waive that conflict, we reverse the Court of Appeals' decision and the trial judge's denial of Kiker's petition for post-conviction relief.

### Facts

¶2.     On the evening of March 6, 2002, Kiker's mother called the George County Sheriff's Department to report that she could not get through to her son's home telephone. When a deputy sheriff arrived at Kiker's home, he found Kiker standing over his wife's dead body holding the instrument of her death, a firearm.

¶3.     Kiker testified at trial, asserting that his wife's demise had resulted from an accident. Kiker said that they had been arguing when Renee came after him with a gun, threatening to kill him. According to Kiker, Renee was accidentally shot as they were struggling over the gun. It was undisputed that he and Renee had a tumultuous relationship, and evidence was adduced that each spouse had engaged in physical abuse of the other.

¶4.     The only direct evidence to dispute Kiker's version of events came from Bobby Crawford, a jailhouse informant. Crawford testified that, while they were in jail together, Kiker had told him that he could no longer withstand his wife's mistreatment and had intentionally shot her in the head.

¶5.     Kiker was represented at trial by two attorneys, Darryl Hurt, Sr., and Sidney Barnett. During Hurt's cross-examination of Crawford, Hurt asked Crawford whether he was under a criminal indictment. The prosecutor objected, arguing that pending criminal charges were

2

not admissible for impeachment purposes under the Mississippi Rules of Evidence. The prosecutor further commented, "we were also made aware earlier of a concern of Mr. Barnett, the situation." After a brief reply argument from Hurt, the prosecutor withdrew his objection, and the following exchange occurred, in the jury's presence:

> Hurt: Are you presently under an indictment for a crime by the Grand Jury of this County?
>
> Crawford: ***You'll have to ask my lawyer right there, Mr. Barnett.*** I am going to Drug Court rehab.
>
> Hurt: I want you to answer my question.
>
> Crawford: I'm answering it the best I can. I don't know it if [sic] was an indictment or not. I know I did four months on my sentence and I'm going to a drug rehab. I'm not an educated man.
>
> Hurt: But I'm asking you a question. I'm not going to argue with you, sir. I'm merely asking you a question, and I would like for you to answer it. Have you been indicted by the George County Grand Jury for a crime?
>
> Crawford: Yes, sir.
>
> Hurt: And what is that crime for which you've been indicted?
>
> Crawford: Manufacturing.

(Emphasis added.) Shortly thereafter, Hurt concluded his cross-examination of Crawford.

¶6.     Beyond Crawford's in-court statement that Barnett was his attorney, nothing else appears in the record on direct appeal regarding Barnett's representation of both Kiker and Crawford. When Kiker testified in his defense, his attorneys did not ask him about the confession he allegedly had made to Crawford while the two were in jail. Crawford could

3

not recall when he was in jail with Kiker, and, other than Crawford's testimony, the record does not indicate whether Crawford and Kiker were in fact incarcerated at the same time.

¶7.    The same attorneys, Barnett and Hurt, represented Kiker on direct appeal. The case was assigned the Court of Appeals, which affirmed his conviction and sentence. *Kiker I*, 919 So. 2d 190. As Kiker's attorney on direct appeal, Barnett served as Kiker's advocate until at least October 11, 2005, the date on which the Court of Appeals affirmed Kiker's conviction. *Kiker I*, 919 So. 2d 190. Exactly two weeks later, Barnett was in the George County Circuit Court representing Crawford, a key witness against Kiker, on a guilty plea. Thus, Barnett's concurrent representation of Kiker and Crawford went on for years.

¶8.    On November 8, 2007, a panel of this Court granted, in part, Kiker's application for leave to proceed in the trial court on the post-conviction issue of "whether Kiker's Sixth Amendment rights were violated due to his trial counsel's representation of a witness for the State." An evidentiary hearing was held in the George County Circuit Court before the same judge who had presided over Kiker's trial.

¶9.    At the post-conviction hearing, Kiker testified that Barnett had been appointed by the court to represent him "a couple of days after it happened," and that Kiker's family had hired Hurt shortly thereafter. According to Kiker, he met with both attorneys several times before his trial and was told that Crawford would testify against him. However, Kiker was never told that Barnett also represented Crawford, and Kiker claimed that he first learned of this conflict when Crawford was on the witness stand. Kiker testified that had he been informed of Barnett's representation of Crawford, he would not have waived the conflict of interest and would have sought replacement counsel.

4

¶10.    The State presented two witnesses at the post-conviction hearing: Lee Martin, the assistant attorney general who prosecuted Kiker's murder case, and Kevin Bradley, the assistant district attorney who handled the charges against Crawford. Martin testified that, shortly after Kiker's trial began, Barnett informed the prosecution and the trial judge that he was representing Crawford on pending, drug-related charges. While Martin agreed that Kiker should have been made aware of the conflict, neither he nor the trial judge had taken any action to ensure that Kiker was timely informed of this conflict. Martin testified that he did not know of any plea arrangement associated with Crawford's testifying against Kiker.

¶11.    Bradley testified concerning the handling and disposition of the charges against Crawford, asserting that the plea deal offered to Crawford was not in exchange for his testimony against Kiker. Crawford was indicted on June 18, 2002, for possession of methamphetamine and possession of methamphetamine precursors. On December 3, 2002, a bench warrant for contempt was issued for Crawford, but the warrant was lifted on February 4, 2003, roughly eleven days after Kiker was indicted for murder. Crawford testified in Kiker's trial on July 31, 2003, and as demonstrated by his testimony, seemed confused about the nature and status of the charges against him and attempted to defer the question to his lawyer, Barnett. On October 20, 2003, less than two months after Kiker's trial, another bench warrant was issued for Crawford, but he was not arrested until July 19, 2005. On October 25, 2005, with Barnett as his attorney, Crawford pled guilty to both counts contained in the June 18, 2002, indictment and also pled guilty to failure to register as a sex

offender.[1] Crawford received an eight-year sentence on each of the drug charges, with three years to serve, and five years on the failure-to-register charge, with two years to serve. The sentences for the drug charges were ordered to run consecutively, and the sentence for his failure to register was ordered to run concurrently with the other sentences, giving him a total of six years to serve. Crawford was ordered to be incarcerated in a facility separate from Kiker and from another man against whom he had provided incriminating testimony in a case unrelated to Kiker's.

¶12. The trial judge entered a written order denying Kiker's petition for post-conviction relief, finding that "there was not an actual conflict in existence at the time the State's witness Bobby Crawford, testified during the murder trial of Julius Wesley Kiker." The judge also based his decision on findings that: Hurt was Crawford's lead attorney; the State did not offer a plea deal to Crawford in exchange for his testimony; Crawford was not Kiker's codefendant and was not involved in the murder of Renee Kiker; Crawford's testimony was not the "centerpole" of the State's case; and Kiker's attorneys were not deficient and provided effective assistance of counsel. The Court of Appeals agreed with the trial judge's reasoning and affirmed the denial of Kiker's petition. *Kiker II*, 2009 WL 3740685.

---

[1]It is unclear when Crawford was charged with failure to register as a sex offender. Numerous documents related to Crawford's criminal charges were received into evidence at the post-conviction hearing as State's Exhibit 1. Kiker's attorney designated this exhibit as part of the record on appeal, but the George County Circuit Clerk's office included only State's Exhibit 2, the transcript of Crawford's plea colloquy, as part of the record on appeal. Kiker's attorney did not certify the record as complete pursuant to Mississippi Rule of Appellate Procedure 10(b)(5).

**Discussion**

¶13.    "In all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defence."  U.S. Const. amend. VI.  *See also* Miss. Const. art. 3, § 26 ("In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both  . . . .")  "[A]dept representation encompasses two broad principles: minimum competence and loyal assistance."  ***Armstrong v. State***, 573 So. 2d 1329, 1331 (Miss. 1990) (citation omitted).   Moreover, constitutional guarantees of due process of law require undivided loyalty of defense counsel.  ***Littlejohn v. State***, 593 So. 2d 20, 23 (Miss. 1992) (citing U.S. Const. amend. V; ***Alvarez v. U.S.***, 580 F. 2d 1251, 1256 (5th Cir. 1978) (***Porter v. U.S.***, 298 F. 2d 461, 464 (5th Cir. 1962)).  *See also* Miss. Const. art. 3, § 14 ("No person shall be deprived of life, liberty, or property except by due process of law.").

¶14.    "Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks."  ***Littlejohn***, 593 So. 2d at 22.  Because "[l]oyalty is an essential element in the lawyer's relationship to a client," the Mississippi Rules of Profession Conduct prohibit a lawyer's representing conflicting interests without knowing and informed consent from the client(s).  Miss. R. Prof'l Conduct 1.7 & cmt.[2]  If an impermissible conflict arises

---

[2]Mississippi Rule of Professional Conduct 1.7(b) provides,

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless the lawyer reasonably believes:

(1) the representation will not be adversely affected; and

(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation

7

after the lawyer already has undertaken representation, the lawyer should withdraw from the case. Miss. R. Prof'l Conduct 1.7 cmt, 1.16. "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." *Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

¶15. When a trial judge becomes aware that the accused is being represented by an attorney with an actual conflict of interest,

> The trial judge is under a duty to advise the defendant of his right to separate, independent counsel. In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in the narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel.

*Littlejohn*, 593 So. 2d at 25 (quoting *Alvarez* 580 F. 2d at 1259-60) (internal citations omitted). Likewise, the prosecution has an obligation to notify the trial court when it becomes aware that the defense attorney has an actual conflict of interest in his representation of the accused. *Id.*

¶16. When the accused is represented by an attorney with an actual conflict of interest, the accused has received ineffective assistance of counsel as a matter of law, and "reversal is automatic irrespective of a showing of prejudice unless [the accused] knowingly and intelligently waived his constitutional right to conflict free representation." *Armstrong*, 573 So. 2d at 1335. Thus, the standard set out in *Strickland v. Washington*, 466 U.S. 668, 694,

---

and the advantages and risks involved.

8

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), requiring a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," is inapplicable to cases when the defendant's attorney "actively represented conflicting interests." *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2001). As this Court has recognized,

> Once an actual conflict is demonstrated, a showing of specific prejudice is not necessary, for to hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of prejudice suffered by a particular defendant. An accused's constitutional right to effective representation of counsel is too precious to allow such imprecise calculations.

*Littlejohn*, 593 So. 2d at 25 (quoting *Alvarez* 580 F. 2d at 1259).

¶17. On the other hand, when there existed only a *potential* conflict of interest at trial, a defendant must demonstrate on appeal that "a conflict of interest actually affected the adequacy of his representation." *Mickens*, 535 U.S. at 168 (quoting *Sullivan*, 446 U.S. at 348-49). An example of a potential conflict of interest is when an attorney undertakes dual representation of codefendants without any objection. *Sullivan*, 446 U.S. 335. Without objection from defense counsel, "trial courts may assume either that multiple representation [of codefendants] entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Id.* at 346.

¶18. Therefore, whether Kiker must demonstrate prejudice turns on whether there was an actual, as opposed to a potential, conflict of interest. In the present case, by representing Kiker and a witness against him, Barnett clearly was "actively represent[ing] conflicting interests." *Mikens*, 535 U.S. at 166. Barnett owed a duty of loyalty both to Kiker and to Crawford, a duty that was impossible to fulfill if one of his clients was offering testimony

9

against the other. As Crawford's attorney, Barnett had the duty to advise Crawford, who was facing criminal charges of his own, of his right against self-incrimination. Barnett also had the duty to counsel Crawford in his decision of whether to testify against Kiker. On the other hand, as Kiker's attorney, Barnett was charged with attacking Crawford's credibility, which would have included an inquiry into Crawford's criminal background, and his current circumstances, with which Barnett should have been intimately familiar. Barnett could not have acted as a zealous advocate for Kiker without disclosing information about Crawford which he gained as Crawford's lawyer. Likewise, Barnett could not have acted as an advocate for Crawford after seeking, on behalf of Kiker, to undermine Crawford's credibility. Whether it was Hurt or Barnett who actually cross-examined Crawford during Kiker's trial is of no consequence. Both lawyers were present, ostensibly working together on behalf of Kiker. Presumably, they also had worked together in preparation for trial.

¶19.    Although this Court has never dealt with this specific situation, many courts have rightly held that when a defense attorney contemporaneously represents a prosecution witness, there is a *per se*, actual conflict of interest. *See e.g., **People v. Thomas***, 545 N.E.2d 645 (Ill. 1989) ("Where defense counsel has represented a State's witness, a *per se* conflict of interests exists if the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of defendant."); ***Commonwealth v. Hodge***, 434 N.E.2d 1246 (Mass. 1982) (per se denial of effective assistance of counsel when defense counsel's partner represented prosecution witness in unrelated civil matter); ***People v. Stewart***, 511 N.Y.S.2d 715 (N.Y. App. Div. 1987) (prejudice presumed where lawyer also represented defendant's father in unrelated civil case and father testified against son).

10

Therefore, we find that Barnett was under an actual conflict of interest, and Kiker need not demonstrate any specific prejudice to his defense.

¶20.    The Court of Appeals recognized that Barnett had a conflict of interest, but it agreed with the trial judge that Hurt's role as the lead attorney cured this conflict. *Kiker II,* 2009 WL 3740685, at *5. Specifically, the Court of Appeals held that "[d]espite Barnett's conflict of interest, the situation was remedied by Hurt's representation of Kiker and his handling of the vast majority of the trial, including the questioning of Crawford." *Id.* We disagree. Even if one were able to divine from the record that Barnett "played a negligible role in the trial," a judgment which we do not have sufficient information to make, Barnett's conflict was imputed to his cocounsel by virtue of their association in the joint undertaking of representing Kiker. *See* Miss. R. Prof'l Conduct 1.10.

¶21.    The Court of Appeals also put stock in its conclusion that "[w]hen Barnett became aware of the conflict, he brought it to the attention of the circuit court and the State." *Id.* at *4. First, we cannot discern from the record when it was that Barnett became aware of the conflict. The State disclosed Crawford's name as a potential witness months before trial. Barnett should have been aware of the conflict then. However, he failed to mention his representation of the prosecution witness until after Kiker's trial had begun. Furthermore, Barnett's ethical obligation was not satisfied simply by informing the court and the prosecution of the actual conflict. He had a duty to withdraw from the case, or, if feasible, to tell Kiker about the conflict and to seek to obtain a knowing and informed waiver from his client. Miss. R. Prof'l Conduct 1.7, 1.16.

11

¶22. Moreover, the trial court itself had an affirmative duty, upon being informed of the conflict, to ascertain from Kiker himself whether he was aware of the conflict and its inherent propensity to impact him adversely, and, if so, whether Kiker, with full awareness of the conflict's potential ramifications, wished to waive the conflict or obtain new counsel. *Littlejohn*, 593 So. 2d at 25.

¶23. It is undisputed that Kiker himself did not waive this actual conflict of interest. The trial judge, the defense attorneys, and the prosecutor knew about the conflict, and all of them failed in their respective duties. In the absence of a knowing and intelligent waiver from Kiker, prejudice is presumed, and we must reverse the conviction and remand the case. *Id.*

¶24. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**

12