COLEMAN, Justice,
dissenting:
¶ 153.' Heretofore, when an " attorney continued to represent a criminal defendant despite the existence of an actual conflict of'interest, such • continued representation constituted per se ineffective assistance of counsel and mandated reversal arid a new trial. As more 'fully discussed below, today’s majority overrules the precedent that so strictly safeguards the constitutional right to counsel in criminal trials. Because the majority would affirm Crawford’s conviction in the face of the fact that his first attorney represented him despite the existence of an actual conflict of interest, I dissent.
. ¶ 154. In Kiker v. State, 55 So.3d 1060 (Miss.2011), a unanimous decision of the Court in which seven of the current members of. the Court, participated, the Court unequivocally held that when a criminal defendant is represented by counsel with an actual conflict of interest, it is per se ineffective assistance of counsel. Kiker, 55 So.3d at 1067 (¶ 19). “In the absence of a knowing and intelligent waiver from [the defendant], prejudice is presumed....” Kiker, 55 So.3d at 1068-(¶ 23). For what *939 ever reason, the strong rhetoric of the Kiker Court has been ignored today.
¶ 155. I readily acknowledge that the attorney’s conflict of interest in Kiker presented itself in a different way. There, Kiker stood accused of murdering his wife; indeed, a deputy sheriff found him standing over her dead body with the murder weapon in hand. Kiker, 55 So.3d at 1063 (¶2). Kiker- contended his wife’s death resulted from an accident. Id. at 1063 (¶ 3). To contest his contention, the state called a jailhouse informant to testify against Kiker. Id. at 1063 (¶4). Theinformant testified that Kiker had confessed to him that he had intentionally shot his wife in the head. Id. One of the two attorneys who represented Kiker also represented the informant, and the informant said as much on the stand during the trial. Id, at 1023 (¶ 5). Regardless, Kiker’s conflicted counsel continued his representation despite having another client whose interests directly conflicted with Kiker’s.
¶ 156. In the case sub judice, the conflict of Crawford’s counsel is of a different type. William Fortier represented Crawford first in the instant case. He filed a motion to withdraw as counsel on February 1,1993, in which he represented to. the trial court the following, quoted at length given its importance to the instant issue:
On Friday, January 29, 1993, certain facts concerning the- Defendant were brought to the attention of the Movant which totally and completely altered Movant’s belief and trust in his client. Overwhelming evidence was presented at that time that his client, Defendant, Charles Ray Crawford had committed another heinous crime, the kidnapping of a young female for substantial ransom money. In addition, your movant would show that he has now learned that the defendant, on Saturday, January 30, 1993, viciously murdered this innocent young lady. Movant would show that all acts of the defendant now appear to movant to be coldhearted, calculated, and premeditated.
Movant would show unto the Court that he has searched the depilis of his'soul, and there is no way that he can set aside his prejudiced feelings now existing towards the Defendant in order to capably and properly represent the Defendant to the best of his ability. The Defendant’s conduct constitutes pursuit of an objective which the lawyer considers repugnant and imprudent within the purview of Rule 1.16 of the Mississippi Rules of Professional Conduct, so as to allow movant’s withdrawal as' counsel.
Furthermore, pursuant to the requirements of Rule 1.6 of the Mississippi Rules of Professional Conduct, it was necessary for movant to cooperate with State and Federal law enforcement officials to try and prevent defendant from committing further criminal acts, and, therefore, further representation by movant of defendant would constitute a clear and dfetinct conflict of interest,
Fortier’s grounds for requesting withdrawal indicate that.he believed his client to be guilty of another, heinous crime and that his belief in his client’s guilt rendered him unable to represent, him. He indicates that he had begun working with law enforcement officials against his client. Finally, he represented to the court that his continued representation of Crawford “would constitute a clear and distinct conflict of interest.” ⅜
¶ 157. Fortier filed the motion to withdraw on February 1,1993, a Monday. The trial court did not grant the motion to withdraw until February 4, 1993, a Thursday. Had Fortier taken no action on Crawford’s behalf during the- three-day pendency of the motion to withdraw, I would be content to hold that his represen *940 tation ended upon filing the motion and no error occurred.. However, Fortier did act as Crawford’s counsel during the four days the motion was open. The trial judge held a competency hearing the same day that Fortier filed his motion to withdraw. The competency hearing was held for purposes of two separate criminal proceedings against Crawford — Cause Number 5779 and Cause Number 5780. At the time of the hearing, Cause Number 5779 was an aggravated assault case, and Cause Number 5780 involved the rape and kidnapping charges at issue here. From, the hearing transcript, it is apparent that Fortier represented Crawford in both cases, and For-tier intended to offer insanity defenses as to both cases. At the outset of the hearing, the proseeuting'attorney informed the Court that Crawford would now be charged with a third crime — capital murder.
■ ¶ 158. The prosecutor continued by informing the Court that “a legitimate question has arisen as to whether the defendant is a[sic] presently competent to be able to assist his lawyer” at trial. According to the prosecutor, he conferred with Fortier, and Fortier agreed to join the motion for a mental examination at Whitfield. Fortier also addressed the Court— after he filed the above — described motion to withdraw — and indicated his agreement with the-motion to have Crawford examined. Fortier said, “I think there is a serious question as to his ability to stand trial on these charges based on the acts that have come to light over the weekend. ...” (Emphasis added.) The record indicates that the facts of which Fortier spoke at the hearing are the facts referenced in his motion that gave rise to the conflict of interest. Accordingly, I can draw no other conclusion than at the February 1 hearing, Fortier acted as Crawford’s attorney despite the existence of a conflict of interest.
¶ 159. At the end of the hearing, and after submitting his client to the mental examination, Fortier asked the trial judge to -rule on his motion to withdraw as counsel. The trial judge responded, “I’m going to hold that until I hear from the physician.” Later in the day of February 1, 1993, the trial court entered the order mandating that Crawford undergo a psychiatric evaluation.[21] As noted above, the tfial judge allowed. Fortier’s withdrawal three days later by order dated February 4,1993.
¶ 160. From my review of the above-described documents of record, it is absolutely clear that Fortier believed he could not loyally represent Crawford. In Kiker, the Court wrote:
“In all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defence.” U.S. Const, amend. VI. See also Miss. Const, art. 3, § 26 (“In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both-”) “[A]dept representation encompasses two broad principles: minimum competence and loyal assistance.” Armstrong v. State, 573 So.2d 1329,1331 (Miss.1990) (citation omitted). Moreover, constitutional guarantees of due process of law require undivided loyalty of defense counsel. Littlejohn v. State, 593 So.2d 20, 23 (Miss.1992) (citing U.S. Const. amend. V); U.S. v. Alvarez, 580 *941 F.2d 1251, 1256 (5th Cir.1978) (Porter v. U.S., 298 F.2d 461, 464 (5th Cir.1962)). See also Miss. Const. art. 3, § 14 (“No person shall be deprived of life, liberty, or property except by due process of law.”).
“Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.” Littlejohn, 593 So.2d at 22. Because “[Royalty is an essential element in the lawyer’s relationship to a client,” the Mississippi Rules of Profession Conduct prohibit a lawyer’s representing conflicting interests without knowing and informed consent from the client(s). Miss. R. Profl Conduct 1.7 & cmt. 2 If an impermissible conflict arises after the lawyer already has undertaken representation, the lawyer should withdraw from the case. Miss. R. Profl Conduct 1.7 cmt., 1.16. “Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial.” Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
Kiker, 55 So.3d at 1065-1066 (¶¶ 13-14). While the conflict of interest facing Fortier differs from the one that confronted Kiker’s attorney, both manifestations call into question the loyalty of an attorney to his client. I am of the opinion that the Kiker Court’s holding should apply to either.
¶ 161. Also, the trial judge erred in proceeding with the competency hearing and allowing Fortier to continue to represent Crawford — however briefly — without informing Crawford of the conflict. Kiker, 55 So.3d at 1068 (¶22).
¶ 162. Two things are true. First, For-tier had a conflict of interest. Fortier represented as much to the trial court, and the trial court eventually allowed his withdrawal. Fortier found in himself sentiments toward his client that would not allow him to provide loyal, sufficient representation. Although, as the majority points out, ‘other jurisdictions have drawn a distinction between conflicts in which an attorney represents multiple clients and non-multiple client .conflicts, I consider .the distinction to be one without a difference in the instant case where Fortier’s loyalty to Crawford became compromised. Second, Fortier continued to represent his client, however briefly, despite the existence of the conflict. Pursuant to the Kiker Court’s holding, here is where our discussion of the assignment of error should end. We should hold that Crawford per se received ineffective assistance of counsel, and we should reverse and remand. All remaining debate and discussion can concern itself with only one thing — -whether Crawford can demonstrate Strickland prejudice, which he is not required to do under Kiker.
¶ 163. The majority recasts the choice we, as a Court, face as one between'the test mandated by the facts found in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), on the one hand and the Strickland test as applied by the Fifth Circuit in Beets v. Scott, 66 F.3d 1258 (5th Cir.1995), when in reality the Kiker holding is different from and stronger than either. Cuyler involved a multiple-client conflict of interest, and the Strickland Court described it as follows:
One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice [than a case in which the defendant effectively had no counsel]. In Cuyler v. Sullivan, 446 U.S., at 345-350, 100 S.Ct., at 1716-1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of *942 counsel’s duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in- certain situations likely to give rise to conflicts, see, e.g., Fed. R.Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of1 interest. - Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment' claims mentioned abové. Prejudice is presumed only if the defendant demonstrates that counsel “actively represented conflicting interests” and that “an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler v. Sullivan, supra, 446 U.S., at-350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted).
Strickland, 466 U.S. at 692,104 S.Ct. 2052. Accordingly, while Cuyler holds that prejudice is presumed in cases involving actual conflicts of interest, it just as clearly, holds that the rule is not a “per se ” rule and the defendant- must still demonstrate that the' conflict in question “adversely affected his lawyer’s performance.”
¶164. While I understand the Cuyler Court’s requirement that the defendant must show an adverse affect on performance, and I do not believe such a requirement; if adopted by the Mississippi Supreme Court, would violate the constitutional right to counsel, I simply cannot find it in Kiker. In fact, the Kiker Court wrote, “Therefore, we find that Barnett was under an actual conflict of interest, and Kiker need not demonstrate any specific .prejudice to his defense.” Kiker, 55 So.3d at 1067 (¶ 19) (emphasis added).
¶ 165. ■ If a majority of the Court'wishes to factually distinguish ■ the instant case from Kiker on the basis that Fortier’s conflict in representing Crawford was not a multiple-client conflict, then I disagree because, as I write above, the ultimate question under Kiker is whether the' attorney’s loyalty to his client has been compromised. So, while I believe the distinction, so-defined, to be one without a difference, I agree that it is a distinction.
¶ 166. However, the majority appears to be holding that either the Cuyler test or the Strickland test applies. I believe Kiker differs from both, and if the majority is intending to hold that, under any conflict of interest scenario, prejudice must be proved, (Maj. Op. at ll 64), then the majority should explicitly state that it is overruling or modifying the unanimous holding of the Kiker Court. ,
DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.

. • Without mentioning the conflict, a federal district court relied in part on Fortier’s having signed off on the order in denying Crawford federal habeas corpus relief on his conviction for capital murder. Crawford v. Epps, 2008 WL 5095993, *2 (N.D.Miss. Nov. 25, 2008). Although, as discussed below and held in Kiker, prejudice should not be a factor in the instant case, Fortier’s signing off on the order played a role in the federal court’s decision.