# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00816-COA

**RICKEY TROY BRIDGES**                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2020 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | CYNTHIA ANN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: META S. COPELAND |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/15/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Rickey Troy Bridges appeals the Forrest County Circuit Court's denial of his motion for post-conviction relief (PCR). On appeal, Bridges argues the circuit court (1) erred by finding there was insufficient evidence to prove that his second PCR motion met a statutory exception to the procedural bars and (2) should have found that he showed good cause for failing to provide additional affidavits. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On October 12, 1987, Bridges was charged with simple robbery in Forrest County, Mississippi, after entering the Deposit Guaranty National Bank and passing the teller a note,

stating he had a weapon and ordering her to give him money. Bridges left the bank with more than $8,000 of stolen money and fled in a getaway car driven by Melinda Morales. Bridges waived his right to an indictment and pled guilty to simple robbery on October 14, 1987. He was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Supp. 1977). Morales, who was not a habitual offender, was arrested and charged as an accessory after the fact. She later pled guilty to that charge and received a probationary sentence.

¶3. Bridges subsequently escaped MDOC custody and absconded to Alabama. Bridges was then captured and detained in Alabama on charges related to a robbery that had been committed prior to the robbery in Mississippi. The State of Mississippi lodged a detainer with Alabama on March 22, 1989. On June 7, 1989, Bridges was sentenced in Alabama as a habitual offender to life in prison without parole for robbery. Bridges became eligible for re-sentencing about twenty-five years into serving his Alabama life sentence as a result of amendments to Alabama law. Bridges was re-sentenced in Alabama as a nonviolent offender and paroled there in May 2014. After he was paroled, Bridges signed voluntary extradition documents and was returned to MDOC custody on October 15, 2015, to serve the remainder of his 1987 Mississippi sentence for robbery.

¶4. Bridges filed his first PCR motion in April 2016 and requested that the Circuit Court of Forrest County, Mississippi, retroactively run his fifteen-year sentence from 1987

2

concurrently with his Alabama sentence or alternatively credit him for time served in Alabama. The circuit court held that it lacked a legal basis to grant the relief requested and denied Bridges's PCR motion. Bridges initially appealed to the Mississippi Supreme Court, which later dismissed his appeal in May 2018 upon his request.

¶5. Then, on October 23, 2019, Bridges filed his second PCR motion based on his attorney's simultaneous representation of both Bridges and his co-defendant, Morales, in the 1987 robbery case. Bridges claimed his attorney, Jeff Bradley, had suffered from an actual conflict of interest that had an adverse impact on his representation and deprived him of his due process rights, the right to effective assistance of counsel, and the right to a fair trial. After holding an evidentiary hearing, the circuit court denied Bridges's second PCR motion because it was a time-barred and a successive motion. Specifically, the circuit court declared that Bridges had failed to show extraordinary circumstances that would have excepted his claim of ineffective assistance of counsel from procedural bars. The court found that the evidence showed Bridges likely could have been charged with armed robbery, which carried a sentence of life imprisonment. The circuit court determined that Bridges's attorney had obtained a plea deal that provided for a lesser sentence than the maximum (life imprisonment) Bridges could have received at trial.

¶6. Bridges subsequently filed a motion for reconsideration, alleging that he could have been eligible for parole after serving ten years in MDOC custody even if he had been convicted of armed robbery at trial. He also argued that Mississippi's armed-robbery statute

3

was not applicable to the facts of his case because he had not taken the money by violence or exhibited a weapon. The circuit court denied his request for reconsideration after concluding that Bridges had risked being charged with armed robbery at trial; his argument challenging his plea to a sentence without eligibility for parole was unpersuasive; and his claims were not excepted from the procedural bars. Aggrieved, Bridges appeals.

**STANDARD OF REVIEW**

¶7.     "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Hays v. State*, 282 So. 3d 714, 716-17 (¶5) (Miss. Ct. App. 2019) (quoting *Gunn v. State*, 248 So. 3d 937, 941 (¶15) (Miss. Ct. App. 2018)).

**DISCUSSION**

**I.     Time Bar and Successive Motion**

¶8.     The Uniform Post-Conviction Collateral Relief Act requires a PCR motion be made, "in [the] case of a guilty plea, within three (3) years after entry of the judgment of conviction." Miss. Code Ann. § 99-39-5(2) (Rev. 2020).  Further, "any order dismissing the petitioner's motion or otherwise denying relief . . . shall be a bar to a second or successive motion under this article." Miss. Code Ann. § 99-39-23(6) (Rev. 2020).  "Essentially, an appellant is granted one bite at the apple when requesting post-conviction relief." *Clay v. State*, 168 So. 3d 987, 990 (¶9) (Miss. Ct. App. 2013).

4

¶9.     Bridges's judgment of conviction and sentence was entered in October 1987. He was required to file his PCR motion by October 14, 1990. Bridges filed his first PCR motion on April 1, 2016. Bridges filed the PCR motion at issue here (his second PCR motion) on October 23, 2018. We therefore agree that Bridges's PCR motion at issue in this appeal is both time-barred and successive-motion barred.

¶10.    Nonetheless, Bridges argues this second PCR motion is excepted from the procedural bars because his claims involve a violation of his fundamental rights to due process and effective assistance of counsel. Thus, we must now determine whether Bridges's claims meet an exception to the procedural bars.

## II.     Exceptions to the Procedural Bars

¶11.    We find that Bridges provided insufficient evidence to support his ineffective-assistance-of-counsel claim and has not met his burden for establishing a fundamental-rights exception to the procedural bars in the Uniform Post-Conviction Collateral Relief Act (UPCCRA).

¶12.    "When a subsequent PCR motion [has been] filed, the burden falls on the movant to show he has met a statutory exception." *Williams v. State*, 110 So. 3d 840, 843 (¶15) (Miss. Ct. App. 2013).[1] Our supreme court has "h[eld], unequivocally, that errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA."

---

[1] "A PCR movant bears the burden of showing he is entitled to relief by a preponderance of the evidence." *Ducksworth v. State*, 134 So. 3d 792, 794 (¶3) (Miss. Ct. App. 2013).

*Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010). Thus, "[t]o establish an exception, [the movant] must show a violation of one of his fundamental constitutional rights." *Creel v. State*, 305 So. 3d 417, 421 (¶9) (Miss. Ct. App. 2020). "[T]o survive the UPCCRA's procedural bars, there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Moore v. State*, 248 So. 3d 845, 853 (¶21) (Miss. Ct. App. 2017) (internal quotation marks omitted).

¶13.    The "fundamental-rights exceptions [that] have been expressly found to survive procedural bars" include, "[i]n 'extraordinary circumstances,' the right to effective assistance of counsel[.]" *Creel*, 305 So. 3d at 421 (¶9). "An ineffective-assistance-of-counsel claim 'must be sufficiently supported to overcome the [procedural] bar'" and "must [be pled] . . . with specificity[.]" *Cook v. State*, 301 So. 3d 766, 777 (¶¶33, 36) (Miss. Ct. App. 2020).

### A.    Lack of Evidentiary Support from the Record

¶14.    "[T]he mere assertion of a constitutional right violation does not trigger the exception." *Creel*, 305 So. 3d at 421 (¶9). The appellant "has a duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support." *Brown v. State*, 211 So. 3d 709, 712 (¶8) (Miss. Ct. App. 2016) (internal quotation marks omitted).[2]  The claims on appeal "must be supported and proved by the record" and

---

[2] *See also* M.R.A.P. 28(a)(7) ("The argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.").

6

"cannot be decided based on assertions from the briefs alone." *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012). "If the party does not provide this support, this Court is under no duty to consider assignments of error. . . ." *White v. State*, 818 So. 2d 369, 371 (¶7) (Miss. Ct. App. 2002).[3] We further explained that "assignments of error are procedurally barred from review" when the appellant has "failed to make meaningful arguments or cite pertinent authority in addressing [his] issues." *Id*.

¶15.    In *Patton*, the appellant argued the circuit court did not have proper jurisdiction of his claim, but he "[did] not point to any law or facts that . . . support[ed] his allegation[.]" *Patton*, 109 So. 3d at 75 (¶21).   Rather, he had "merely cite[d] numerous cases for the proposition that proof of jurisdiction must appear on the record and judgments entered when a court did not have jurisdiction are void ab initio." *Id*. The supreme court found that the appellant had "provide[d] no meaningful argument or support [for] his claim of error on this ground, other than his recitation of the general law on jurisdiction[,]" and thus, the court refrained from considering his claim on appeal. *Id*. at (¶22).

¶16.    Subsequently, in *Brown*, 211 So. 3d at 712 (¶¶9-10), Brown "did point to an exception" to the procedural bars within his PCR motion, yet he "provide[d] no support for the exception" and "presented no evidence, beyond his mere assertions, to support his ineffective-assistance-of-counsel . . . claims." Brown had "point[ed] to two letters from his

---

[3] "[T]here is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." *White v. State*, 818 So. 2d 369, 371 (¶7) (Miss. Ct. App. 2002).

attorney as evidence[;]" however, this Court found that "[t]he letters [did] not in any way support Brown's assertions that counsel was ineffective." *Id*. at (¶10). Furthermore, Brown had failed to "explain how the submitted evidence support[ed] his assertions." *Id*. Consequently, this Court held that Brown's ineffective-assistance claim was procedurally barred. *Id*.

¶17.    Bridges's initial argument, raised repeatedly in his PCR motion, is that he received ineffective assistance of counsel because Bradley suffered from an "actual conflict of interest" by simultaneously representing Bridges and Morales during plea proceedings.  He argues that Bradley sacrificed a chance to negotiate a better deal for Bridges by neglecting to discover plausible mitigating circumstances available at the time of the plea deals because they would jeopardize the favorable deal for Morales. Finally, Bridges asserts he has shown that his ineffective-assistance claim is excepted from procedural bars due to a fundamental-rights violation based on the presumed prejudice resulting from Bradley's failure to pursue mitigation arguments.

¶18.    Bridges's PCR motion "merely cite[d] numerous cases for the proposition that" simultaneous dual representation may indicate the existence of an actual conflict of interest. *Patton*, 109 So. 3d at 75 (¶21). Similar to *Patton*, "other than his recitation of the general law" on actual conflicts of interest, Bridges failed to support his claim regarding Bradley's alleged conflict of interest. *Id*. at (¶22). On appeal, Bridges's claims "must be supported and proved by the record[;]" this Court cannot decide his claims "based on assertions from the

8

briefs alone." *Id*. Throughout Bridges's PCR motion, he cites to the following documents: his first PCR motion from 2016; his own affidavit; transcripts from the circuit court hearing in this case, showing his attorney stated his potential testimony if called; the circuit court's order on appeal; and transcripts containing his sister's testimony given during the hearing on his first PCR motion. A thorough examination of his PCR motion reveals that while Bridges did, in effect, cite to portions of the record in an attempt to support his claim, the cites he made were not to the facts within the 1987 guilty-plea record.

¶19. The only evidentiary support from the 1987 guilty-plea record that Bridges references is found in the exhibits attached to his second PCR motion, consisting of his criminal information; his waiver of an indictment; Morales's criminal information; Morales's waiver of indictment; Bridges's adjudication and sentencing order; Morales's adjudication and sentencing order; and Bridges's own affidavit. Despite Bridges's contentions, these documents do not substantiate his claims that an actual conflict of interest had arisen and resulted in ineffective assistance of counsel. None of these documents contain evidence of Bradley's negotiations with the prosecutor or proof of Bradley's conduct in presenting the plea deal to Bridges.[4] Of note, Bridges's own affidavit even fails to detail specific actions or

---

[4] Bridges notes that his set of court documents and Morales's set of court documents were signed on the same date. Bridges maintains this fact is significant and indicates an actual conflict of interest existed. However, of more significance is the fact that neither Morales's name nor her association with Bridges as an accessory after the fact to the robbery appear anywhere in Bridges's criminal information, waiver of indictment, or adjudication and sentencing order. The face of the documents Bridges provided lack sufficient evidence to show that Bridges's plea was in any way related to Morales's plea, much less that the plea

statements Bradley made throughout his representation that would indicate possible ineffective assistance or that a conflict of interest had arisen. Furthermore, as in *Brown*, Bridges did not "explain how the submitted evidence support[ed] his assertions." *Brown*, 211 So. 3d at 712 (¶10). Bridges merely asserts that the attached exhibits provide evidentiary support for his claim, but he does not make specific correlations between the contents of the attached exhibits and their significance in meeting his burden for showing ineffective assistance of counsel.

¶20. Ultimately, Bridges failed to provide even a single example of a specific action or statement Bradley made to show that an actual conflict of interest existed. His current PCR motion is based solely on his own bare assertions, sweeping generalizations, and unsupported declarations. We find that Bridges "presented no evidence, beyond his mere assertions, to support his [claim of] ineffective-assistance-of-counsel" during plea negotiations. *Id.* at (¶¶9-10). Because Bridges did not provide the requisite support for his PCR motion and "failed to make meaningful arguments" in support of his ineffective-assistance-of-counsel claim, we are "procedurally barred from review[ing]" the merits of his claims on these grounds. *White*, 818 So. 2d at 371 (¶7).

### B. Insufficient Supporting Evidence in Personal Affidavit

¶21. Bridges's ineffective-assistance-of-counsel claim is also procedurally barred for insufficient supporting evidence in his unsubstantiated affidavit. In *Easterling v. State*, 281

---

deals were contingent, as Bridges alleges.

10

So. 3d 243, 250-51 (¶¶22, 25) (Miss. Ct. App. 2019), this Court declared that the defendant had "failed to present evidence of errors on the part of his initial counsel" based upon the fact that the defendant "claim[ed] that his prior counsel had failed to argue that [he] had not been afforded a translator" but had "made no mention of this [claim] in his personal affidavit and provided no independent supporting affidavits for this contention." We have previously stated that "[i]t is significant to this Court" when the defendant "mentions no complaints at all concerning his attorney's actions" within "his affidavit in support of his [m]otion[.]" *Id.* at 250 (¶21).

¶22.   Where a defendant's "claim is based solely on the allegations made in his brief[,]" he "has failed to demonstrate that his trial counsel was ineffective." *McBride v. State*, 108 So. 3d 977, 980 (¶12) (Miss. Ct. App. 2012). In *Mooney v. State*, 130 So. 3d 145, 147 (¶12) (Miss. Ct. App. 2013), this Court determined that the defendant's affidavit "only offer[ed] his own bare assertions" to support his claim, and we held that the defendant had "failed to show that his attorney's performance was ineffective." We "must decide each case by the facts shown in the record, not assertions in the brief." *Jones v. State*, 962 So. 2d 571, 573 (¶5) (Miss. Ct. App. 2006).

¶23.   In his motion and brief, Bridges "claim[ed] that his prior counsel had" provided ineffective assistance of counsel due to an actual conflict that resulted in an adverse and prejudicial effect to Bridges, but he "made no mention of this [ineffective-assistance claim] in his personal affidavit." *Easterling*, 281 So. 3d at 250-51 (¶¶22, 25). The only statements

11

related to this claim were that Bradley did not advise Bridges "of any potential or actual conflict of interest that might exist" due to the simultaneous dual representation of him and Morales[5] and that Bradley urged Morales to persuade Bridges to plead guilty. These statements are only Bridges's bare assertions, though, and he "failed to present evidence of errors on the part of his initial counsel" that showed prejudicial conduct or an adverse effect. *Id*. Rather, Bridges's affidavit "mention[ed] no complaints at all concerning his attorney's actions" that specifically indicated Bradley gave preferential treatment to Morales or her probationary plea offer as an accessory to the crime. *Id*. at 250 (¶21).

¶24. Bridges's affidavit was silent as to any of the pertinent details or facts listed in his PCR motion, including allegations that Bradley negotiated plea deals before meeting with him; mitigating factors from his tumultuous childhood existed at the time; Bradley failed to investigate his background; Bradley chose not to pursue alternative defense strategies; Bradley argued to the prosecutor that Bridges was more culpable; Morales's plea deal was contingent on Bridges's plea; Bradley arranged for Morales and Bridges to meet in the

---

[5] Underlying Bridges's appeal is his claim that his defense counsel suffered from a conflict of interest by dual representation of him and his co-defendant, Morales. *See* Miss. R. Pro. Conduct 1.7. "Without objection from defense counsel, 'trial courts may assume either that multiple representation [of co-defendants] entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.'" *Kiker v. State*, 55 So. 3d 1060, 1067 (¶17) (Miss. 2011) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)). There is no evidence in the record indicating that Bradley objected to the multiple representation of Bridges and Morales. Thus, the trial court was permitted to assume that either there was no conflict of interest or that Bridges knowingly accepted such risk, and this claim is without merit.

assistant district attorney's office the day before pleading guilty; Bradley opted not to persuade the prosecutor to offer Bridges a deal for less than the maximum sentence; and Bradley breached his duty of loyalty.

¶25.    Moreover, the only grievance Bridges raised in his affidavit was the following: "Had I not been told that Ms. Morales would be subject to a greater sentence if I did not plead guilty, I would have taken my chances and gone to trial." But nowhere in Bridges's affidavit did he state that Bradley told him that Morales's plea deal was contingent on his guilty plea or otherwise correlated Bradley's conduct with this grievance. Bridges merely stated he "understood" that "Morales would not receive a reduced sentence" if he chose not to take the plea deal. He did not clearly attribute the blame to Bradley's conduct or allege that Bradley made an error that proximately resulted in his guilty plea. His affidavit also evaded assigning responsibility to Bradley by stating "[h]ad I not been told," without disclosing the name of the person who told him that "Morales would be subject to a greater sentence if" he did not accept his plea offer.

¶26.    On its face, Bridges's affidavit "failed to show that [Bradley's] performance was ineffective" and provided insufficient evidence to support his ineffective-assistance-of-counsel claim. *Mooney*, 130 So. 3d at 147 (¶12).

¶27.    Additionally, our supreme court has "recognized in the post-conviction relief context that where a [defendant's]" claims are "unsubstantiated by anything other than [his] own self-serving statement" in his affidavit, the defendant's "ineffective assistance of counsel

13

claim is without merit." *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995). In *Robertson v. State*, 669 So. 2d 11, 13 (Miss. 1996), our supreme court found that the defendant's "affidavit did not track the statute in detail" and that the defendant was "the sole source of information[.]" Because the defendant's affidavit "was the only evidentiary support for his claim[,]" the court declared the defendant's complaint deficient. *Id*. Furthermore, in *Moore*, 248 So. 3d at 853 (¶20), this Court held that the "supporting affidavit . . . did not provide sufficient corroboration" because the witness "had no firsthand knowledge of any statements made by [the defendant's counsel] concerning" the issue raised on appeal. The attesting witness in that case "was not present when the attorney met with [the defendant] regarding the plea offer," and "the only information provided in [the witness's] affidavit regarding what the attorney said to [the defendant] . . . came from [the defendant] himself." *Id*.

¶28.    Here, Bridges's ineffective-assistance claim is "unsubstantiated by anything other than [his] own self-serving statement[s]" in his affidavit and his PCR motion. *Vielee*, 653 So. 2d at 922. The other exhibits he attached as evidence are not relevant to the allegations of his claim and do not include information pertaining to Bradley's actions during plea negotiations.[6] Bridges was "the sole source of information" for his claim, and his affidavit

---

[6] The records and transcripts from Bridges's first PCR motion deal with Bridges's character and his transformation during incarceration and do not discuss Bradley's representation of the co-defendants. Bridges's criminal information and waiver of indictment merely provide evidence of the crimes Bridges was charged with and do not pertain to his plea deal or Bradley's conduct. Morales's criminal information and waiver are only evidence of the charges filed against her and are not evidence of her plea deal or connection to Bridges's plea deal. The trial court's order adjudicating Bridges's guilt and sentence

14

"was the only evidentiary support for his claim." *Robertson*, 669 So. 2d at 13. Because

Bridges was not present during the plea negotiations between Bradley and the prosecutor, he

could not have had any firsthand knowledge as to whether Bradley advocated for a favorable

deal for Morales at Bridges's expense. Thus, Bridges's affidavit supporting his ineffective-

assistance-of-counsel claim was deficient and without merit.[7]

**CONCLUSION**

¶29. Bridges has not alleged or proved the extraordinary circumstances necessary to

adequately support his claim. Thus, we find Bridges has not provided sufficient evidence to

meet an exception to the UPCCRA, and his PCR motion claiming ineffective assistance of

counsel and violations of fundamental rights is procedurally barred. We therefore affirm the

---

impliedly contradicts Bridges's claim. The order states the following: "having been duly advised of all his constitutional rights," and "having ascertained that the plea of guilty was free and voluntary[,]" which does not provide support for his claim of a pressured contingent plea or ineffective assistance. The trial court's order adjudicating Morales's guilt only shows that both parties entered guilty pleas on the same day but does not state her deal was in any way contingent on Bridges pleading guilty first or otherwise reference Bridges at all.

[7] Bridges's PCR motion asserts that the trial court erred by applying the *Strickland* standard for attorney error rather than the *Cuyler* standard and that the trial court improperly required Bridges to show prejudice. *See Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Strickland v. Washington*, 466 U.S. 668 (1984). However, the trial court's order denying Bridges's PCR motion does not address these issues, nor does it state that *Strickland* or *Cuyler* were used in reaching the court's decision. As we find that the circuit court properly held that Bridges failed to prove that his ineffective-assistance claim was excepted from the procedural bars, our inquiry ends there. "The purpose of our appellate review is not to settle questions in the abstract or to issue advisory opinions." *Oak Creek Invests. LLC v. Atlas FRM LLC*, 307 So. 3d 503, 508 n.4 (Miss. Ct. App. 2020) (citing *Scoggins v. Baptist Mem'l Hosp.-Desoto*, 967 So. 2d 646, 649 n.1 (Miss. 2007)). Therefore, we decline to address the issues of whether an actual conflict in representation existed, whether the *Cuyler* standard or *Strickland* standard apply, or whether Bridges was required to show prejudice.

15

circuit court's order denying and dismissing Bridges's PCR motion.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE AND EMFINGER, JJ., CONCUR. WILSON, P.J., McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND LAWRENCE, JJ.; McCARTY, J., JOINS IN PART.**

**WESTBROOKS, J., CONCURRING IN PART AND IN RESULT:**

¶31. I concur with the majority's conclusion that Bridges has not provided sufficient evidence to qualify for the exception to the procedural bar for his claim of ineffective assistance of counsel; however, I cannot concede that Bridges waived his attorney's conflict of interest when the record does not reveal that his attorney Jeff Bradley obtained consent or that the trial court advised Bridges of a conflict. Therefore I write separately.

**FACTS**

¶32. Troy Bridges pled guilty to simple robbery on October 15, 1987. Bridges' co-defendant, Melinda Morales, pled guilty to being an accessory to the robbery. The trial court sentenced Bridges to serve fifteen years, the maximum sentence for a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Supp. 1977), while Morales received a five-year suspended sentence and was placed on probation.

¶33. Years later, Bridges alleged in his 2018 PCR motion that his trial attorney Jeff Bradley had an "actual conflict of interest adversely affecting his performance arising out of his joint representation of Mr. Bridges and Ms. Morales."

16

¶34. Bridges now has the extraordinary circumstance of not having living witnesses available to him at this present time to corroborate his current allegations. Bridges has provided obituary copies of Morales and Bradley. Nonetheless, at the PCR hearing, Bridges' new attorney Julie Epps argued that Bradley bargained for a plea deal on behalf of Morales at the expense of Bridges. The trial court found that Bridges did not meet his burden to warrant an exception to the time-bar and successive-motions bar. On appeal Bridges argues that the trial court erred by finding that his PCR motion was procedurally barred because Bradley suffered from an actual conflict of interest.

**ANALYSIS**

¶35. The necessary inquiry is whether Bradley violated his duty of loyalty by failing to zealously advocate for one client to the detriment of another. In other words, did Bradley suffer from an *actual* conflict of interest? A conflict of interest is foreseeable "when an attorney undertakes dual representation of co[-]defendants without any objection." *Kiker v. State*, 55 So. 3d 1060, 1067 (¶17) (Miss. 2011) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 336 (1980)). Comparatively, an actual conflict exists when the attorney commits an act that credibly shows that the attorney disadvantaged the client. *Witt v. State*, 781 So. 2d 135, 137 (¶7) (Miss. Ct. App. 2000) ("[A]n actual conflict exists . . . if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other

17

client.").[8]

¶36.　Bridges asserts that Bradley suffered from an actual conflict of interest when Bradley told Bridges that Morales would receive a greater sentence if he did not plead guilty. At the PCR hearing, Epps stated that Bridges only pled as a habitual offender pursuant to section 99-19-81 for Morales' sake. If he did not, he was told that the State would not offer Morales a plea deal. Epps stated also that Bradley disadvantaged Bridges by not "advising him about his options." Arguably, Bradley acted toward Morales' benefit, but to Bridges' detriment. In his brief, Bridges alleges that Bradley placed Bridges and Morales in the district attorney's office together to persuade Bridges to take the plea. Bridges has shown with good cause, by presenting obituaries, that he does not have any witnesses to testify to what Bradley told him since both Bradley and Morales are dead. Without more, the record does not support that there was not an actual conflict.

¶37.　While joint representation is not per se a violation of the Sixth Amendment, I cannot find that Bradley did not suffer from an actual conflict when (1) there is no evidence in the record that Bradley advised Bridges of a conflict, (2) there is no evidence indicating that Bradley received a waiver form or consent to jointly represent two adverse defendants, and (3) there is no evidence that the trial court advised Bridges of a possible conflict. *Holloway*

---

[8] For examples of an actual conflict, see *Glasser v. United States*, 315 U.S. 60, 72-75 (1942) ("[C]ounsel failed to cross-examine a prosecution witness.") (negative history omitted), and *Littlejohn v. State*, 593 So. 2d 20, 22 (Miss. 1992) (A client who pled guilty testified against another client.).

*v. Arkansas*, 435 U.S. 475, 489 (1978).

¶38. First, the record does not indicate whether Bradley advised Bridges of the conflict. Adopted about eight months before Bridges' conviction, the Mississippi Rules of Professional Conduct provided, in part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
>> (1) the representation will not be adversely affected; and
>> (2) *the client has given knowing and informed consent after consultation.* The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

Miss. R. Pro. Conduct 1.7(b) (1987). Rule 1.7(b)(2) required Bradley to fully inform Bridges of the potential conflict and obtain consent. Second, even though Rule 1.7(b)(2) did not require an attorney to obtain the defendant's informed consent in writing, this act would have been the best practice for Bradley to follow since he undertook representation of two co-defendants.[9] Third, there is nothing in the record showing that the trial court advised Bridges of the conflict, even though the trial court appointed Bradley as the public defender for both Bridges and Morales. In such a case, the trial court should have advised Bridges of the conflict. *See Armstrong v. State*, 573 So. 2d 1329, 1332 (Miss. 1990) (citing *Wheat v. United*

---

[9] "A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients . . . ." Miss. Code Pro. Resp. EC 5-15, at 461 (1986); *see Ball v. State*, 327 So. 3d 137, 138 (¶2) (Miss. Ct. App. 2020) (stating that defendant signed a waiver).

*States*, 486 U.S. 153, 160 (1988)) ("[I]t is incumbent upon courts which confront and which are alerted to possible conflicts of interest to take the necessary steps to ascertain whether conflict warrants separate counsel."); Model Rules of Pro. Conduct r. 1.7 cmt. (Am. Bar Ass'n 1984) ("[I]nquiry by the court is generally required when a lawyer represents multiple defendants . . . .").

¶39.    Ultimately, without evidence that the trial court advised Bridges, that Bradley advised Bridges, or at the very least that Bridges gave his consent, I cannot in good conscience be certain that an actual conflict of interest did not exist.

**McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION.  McCARTY, J., JOINS THIS OPINION IN PART.**